Joseph R. Rosborough, Appellant, v. City of Moline, a Municipal Corporation, Appellee, and Moline Heating and Construction Company, a Corporation.

Gen. No. 11,494.

Second District, Second Division.

April 21, 1961.

Joseph R. Rosborough, of Moline, for appellant.

McLaughlin & McLaughlin, of Moline, for appellee.

CROW, P. J.

This is a suit for a declaratory judgment under Section 57.1 of the Civil Practice Act, Ch. 110 Ill. Rev. Stats., 1959, par. 57.1, to determine whether the cost of repair and replacement of a water service pipe in a city street connecting from a water main in the street to the abutting property of the plaintiff Joseph R. Rosborough is chargeable to the plaintiff, as the abutting property owner, or to the defendant City of Moline. The Court entered a judgment for the defendant City of Moline and against the plaintiff to the effect that the defendant City has the authority to assess the cost of installation and maintenance of private water service lines to the abutting property owner and that the defendant City does not owe $1031.14 to a co-defendant, the Moline Heating and Construction Co. From that judgment this appeal is taken by the plaintiff, originally to the Supreme Court, and by that Court transferred here.

The plaintiff's complaint sets out that he owns the property at the southeast corner of 5th Avenue and 20th Street in the City of Moline, improved by a house on the corner lot, and that he also owns the next property south thereof fronting on 20th Street. Fifth Avenue extends east-west, and 20th Street extends north-south. The subsurface water service pipe from the water main at the north side of 5th Avenue which service pipe extends south across 5th Avenue to the plaintiff's property, burst under the street. The defendant city demanded that the plaintiff pay the cost of repair or replacement, and the plaintiff refused. The plaintiff prays, in effect, that the question of the parties' liabilities therefor be determined and that the

170

defendant City be found obligated for such, and that it be found indebted to the co-defendant Moline etc. Co. for the repairs. The complaint alleges he seeks a declaratory judgment to determine an actual controversy, namely, the obligation of the defendant City to maintain and replace this water service pipe. It alleges that he has had the co-defendant Moline Heating etc. Co. install a new service pipe, it has billed him for such for $1106.77, and he denies he is responsible for such.

The defendant City filed an Answer admitting or denying various parts of the complaint, and, as a part thereof, an affirmative defense alleging that the plaintiff had agreed by an "Owner's application and guarantee of Water Bill" of October 30, 1953 for water service at 506 20th Street to be subject to the Rules and Regulations of the City Water Department, and that Section 18 thereof provides that the installation and repair of all water service pipes from the water main to the property line shall be at the expense of the property owners, and the defendant prayed that the complaint be dismissed. The plaintiff moved to strike the affirmative defense in the answer and the Court allowed the motion, but apparently, from the record, made no affirmative order striking the affirmative defense, and the particular reason or reasons for allowing the motion do not appear in the record. Upon these pleadings—Complaint and Answer—the case was heard before the Court, without a jury.

On the trial a stipulation as to the facts was entered into by the plaintiff and the defendant, one part of which was: "(20) That the water rates charged by the City of Moline are computed according to the needs deemed necessary for the successful operation of the waterworks, and that said rates do not anticipate the repair or installation of service lines from the city main to the curb line; and that the usual practice has

171

been that the repair and maintenance of service lines extending from city mains has been at the expense of the property owner."

At the trial the defendant City of Moline offered in evidence, in addition to the stipulation of facts, an "Owner's application and guarantee of Water Bill" signed by the plaintiff, defendant's exhibit 1, dated October 30, 1953, requesting installation of a water meter at his property at 506 20th Street, which was not the corner property but was the plaintiff's other immediately adjoining property to the south. That document, among other things, provides: "This application and the acceptance thereof by the City shall constitute a contract and shall be subject to all rules and regulations now in force, or that may hereafter be adopted by the City for the government of the Water Department while this contract is in effect." That exhibit was admitted over the objection of the plaintiff that it was immaterial.

At the hearing it was also stipulated, in addition to the stipulation of facts, that defendant's Exhibit 2 is a true copy of the City Ordinance which was in force at the time of the occurrence involved, and that the ordinance is supplied to the Court for its convenience in taking judicial notice thereof, but the plaintiff denied the materiality of this ordinance. That defendant's Exhibit 2 is "An ordinance creating a water department of the City of Moline, Illinois, and providing for the supervision and management of any and all property and matters pertaining thereto", passed and approved December 16, 1935, and the copy thereof in the record is in a pamphlet form called "Rules and Regulations of the Water Department, City of Moline, Illinois." Section 5 of the Ordinance provides as follows:

"Sec. 5. Rules and Regulations of the Water Department. The following rules and regulations

172

shall be considered a part of the contract with every consumer of City Water and said consumer shall be governed by and subject to the following rules and regulations; and, it is hereby made the duty of the Superintendent to enforce the same."

Then follow various sections setting forth the rules, regulations, and provisions as to the administration of many different features of the water system, among which is Section 18 "Maintenance of Service Pipes". That Section 18 provides as follows:

"Section 18. Maintenance of Service Pipes. All service pipes and fixtures from the street water main to the premises, including the corporation cocks at the mains shall be installed and maintained at the expense of the property owners, and any leaks or other defects in the same shall be promptly repaired by them, or if not promptly repaired the water shall be turned off until such repairs have been made, and the expense thereof shall be charged against such owner, and must be paid before water shall be turned on again."

The further facts, as stipulated in the stipulation of facts, briefly, are these: The plaintiff owns the corner property on the south side of 5th Avenue and the east side of 20th Street where 5th and 20th intersect, and he also owns the residential property at 506 20th Street next south of that corner property on the east side of 20th Street. He has owned the corner property since 1950 and the adjoining property to the south since 1953. The defendant City of Moline operates the waterworks system for the City and has a subsurface water main extending along the north side of 5th Avenue. The plaintiff's property at the southeast corner is connected to this water main by a lateral subsurface water service pipe extending from his property line, under the sidewalk, through a curb valve

box, and across 5th Avenue to the main. This same water service pipe served the plaintiff's other adjoining property to the south at 506 20th Street. The plaintiff was directed by the City to repair a leak in that lateral water service pipe at a point under the middle of 5th Avenue. The plaintiff refused. Subsequently a water pipe in the other property of the plaintiff to the south required repairs, and the City directed the defendant Moline Heating & Construction Company that the water service pipe be repaired. The City refused to issue a permit to open the pavement at the middle of 5th Avenue at the point of the leak, but required openings to be made at the north and south sides of the Avenue and a new service pipe to be augered through under the street, which was done. The plaintiff was billed by Moline Heating and Construction Co., a co-defendant herein, for $1104.77 for the repairs.

It is the plaintiff's theory, initially, that the Court erred in admitting in evidence defendant's exhibit 1, being his "Owner's application and guarantee of Water Bill" of October 30, 1953 for 506 20th Street, which is not the corner property, but his immediately adjacent property to the south, and in admitting in evidence or taking judicial notice of defendant's exhibit 2, being the ordinance of December 16, 1935, and that (1) by statute and judicial interpretation, a water service pipe located under a public street and extending from the main to the property line abutting the street is part of the City waterworks and distribution system; (2) the cost of repair or replacement of such a water service pipe under a street is the obligation of the City, and cannot be shifted by the City to the property owner, and that everything upon, above, and beneath the City streets is exclusively under the City's jurisdiction; and (3) no City ordinance pertaining to the issues of this case is properly before the Court and this

174

appeal must be resolved by determining whether there is or is not any basis for the Court's imposing such a liability upon the plaintiff as an abutting property owner.

It is the defendant-appellee's theory that municipalities, without violating the rights of the consumer, may assess to the consumer the cost of installation and repair of the water service lines by virtue of the authority vested in them by statute, and, more particularly, that (1) it is within the law for water suppliers, whether municipally or privately owned, to install service lines and charge the reasonable cost of the installation to the abutting property owners as long as the regular water rates do not anticipate the company's or city's carrying that burden; (2) in order for a municipality to adopt a regulation charging property owners for the installation of service lines, authority must be derived from the State and that the State has by statute given municipalities the necessary authority; (3) if it is within the law to charge private property owners for the cost of installation of service lines, then the cost of subsequent repairs thereto may also be charged to them; and (4) if there is a contractual relationship, as there is—express or implied—it may be enforced on the same grounds as any other private contract, since municipalities, when operating a waterworks, are acting in a private capacity rather than in the discharge of a governmental function.

■ There was no error in admitting in evidence defendant's exhibit 1, being the plaintiff's "Owner's application and guarantee of Water Bill" of October 30, 1953, for 506 20th Street. The same subsurface lateral water service pipe which served the plaintiff's corner property at the southeast corner of 5th Avenue and 20th Street also served this other adjoining property of the plaintiff to the south at 506 20th Street. It is a portion of that very service pipe between the

175

water main in 5th Avenue and the north line of the plaintiff's corner property which is here concerned. That application, defendant's exhibit 1, and its acceptance by the City constituted, by its terms, an express contract, or evidence of an express contract, which was subject to the rules and regulations of the City for the government of the Water Department, including Sections 5 and 18 of the Ordinance of December 16, 1935, relative to the installation, maintenance, and repair of that very service pipe. It cannot be said that that application was immaterial. Nor does it make any difference that the plaintiff's motion to strike the affirmative defense part of the defendant's answer, which had specially referred to that application, had been allowed. It adequately appears from the complaint and the balance of the answer that this was a case of "actual controversy" in which the plaintiff was seeking "binding declarations of rights" and "a declaration of the rights of the parties interested" as to whether the expense of the repair and replacement of this water service pipe is the legal responsibility of the plaintiff or the defendant City. If it was not a case of "actual controversy" then there was no basis for the plaintiff's complaint to begin with: Ch. 110 Ill. Rev. Stats., 1959, par. 57.1. There seems to have been, though, no particular dispute over the facts. The differences were as to what the law is. This application, defendant's exhibit 1, was, under the circumstances, entirely admissible under the complaint and balance of the answer, regardless of the affirmative defense part thereof, in support of one feature of the defendant's position in that controversy that, as a matter of law, the matter here involved is the legal responsibility of the plaintiff by reason of an express contract to that effect.

It is necessary next to determine whether the ordinance of December 16, 1935 of the City of Mo-

176

line, defendant's exhibit 2, was properly admitted in evidence, or whether the Court properly took judicial notice thereof, and if properly in evidence or if the Court did properly take judicial notice thereof and, particularly, of Sections 5 and 18, whether such were material. The plaintiff argues that the ordinance was not properly before the Court inasmuch as the plaintiff's motion to strike the affirmative defense part of the answer which had specially referred to that ordinance had been allowed. However, as has been indicated, at the hearing on the merits the plaintiff and defendant stipulated as to the authenticity of the copy of the ordinance and that it was supplied for the Court's convenience in taking judicial notice thereof, the plaintiff only denying the materiality thereof. The Court was required to take judicial notice of "all general ordinances of every municipal corporation within" its circuit: Ch 51 Ill. Rev. Stats., 1959, par. 48a. Defendant's exhibit 2 was an ordinance of this municipal corporation, and, so far as we can see, it was a general ordinance. A Court may properly take judicial notice of a zoning ordinance: Charles v. Chicago (1953) 413 Ill. 428, 109 N.E.2d 790, Ostergard v. Frisch (1948) 333 Ill. App. 359, 77 N.E.2d 537—a building and zoning ordinance: Liberty Nat. Bank of Chicago v. Vance (1954) 3 Ill.App.2d 1, 120 N.E.2d 349—an ordinance regulating the erection etc. of gas service stations: Gobeli v. Braga (1941) 311 Ill. App. 46, 35 N.E.2d 429 —an ordinance regulating the order in which judgments against the city shall be paid: People v. Kelly (1935) 279 Ill. App. 22—and an ordinance adopting rules and regulations for fixing and collecting water rates: Cocanig v. City of Chicago (1960) 25 Ill.App.2d 433, 166 N.E.2d 291. The Cocanig case is particularly close, in principle, to the case at bar so far as is concerned a Court's taking judicial notice of an ordinance relating to rules and regulations having to do with a

177

municipal water supply system. And an ordinance of which a Court may or must take judicial notice need not be stated in the pleading: People v. Kelly, supra. We, therefore, believe that the ordinance in question, defendant's exhibit 2, was properly in evidence or that the Court properly took judicial notice thereof. As to its materiality, we think it was clearly material. It makes no difference that the plaintiff's motion to strike the affirmative defense part of the answer, which had specially referred to that ordinance, had been allowed. This ordinance was, under the circumstances, entirely admissible and a proper subject for judicial notice under the complaint and balance of the answer, regardless of the affirmative defense part thereof, in support of the features of the defendant's position in the controversy that, as a matter of law, the matter here involved is the legal responsibility of the plaintiff by reason of an express or implied contract to that effect.

Ch. 24 Ill. Rev. Stats., 1959, pars. 74–3, and 75–4 (in part) provide as follows:

"74–3. Sec. 74–3. Regulation–Rates–Tax.) The corporate authorities have the power to make all needful rules and regulations concerning the use of water supplied by the waterworks of the city or village, and to do all acts and make such rules and regulations for the construction, completion, management, or control of the waterworks, and for the fixing and collecting of such water rates or rents as the corporate authorities may deem necessary or expedient. The corporate authorities may levy a general tax for the construction and maintenance of the waterworks, and appropriate money therefor."

. . . . . .

"75–4. Sec. 75–4. Regulations–Protection and leasing of land adjacent to artificial lake–Rates

178

–Lien.) The corporate authorities of each municipality have the power to make and enforce all needful rules and regulations in the construction and management of such a system of waterworks, and for the use of the water supplied thereby . . . ."

■ Cities are of statutory creation and their powers are limited to those which are expressly granted by the General Assembly or are necessarily implied from such as are granted: Rockford Savings & Loan Ass'n v. Rockford, City of (1933) 352 Ill. 348, 185 N. E. 623.

■ ■ The business of furnishing water to the inhabitants of a city who desire to obtain their water supply in that manner is not an exercise of the powers of sovereignty, but is public in its nature and impressed with a public interest. It may, where proper legislative authority is given, be carried on directly by the municipal corporation, or by a private corporation acting under a proper franchise, but when a municipal corporation undertakes to so conduct the business it does so in the exercise of its private and not of its governmental functions. No one is compelled to receive or use the water so furnished, except at his own election, but when he does receive and use it, with knowledge, actual or constructive, of the reasonable rates or reasonable rules and regulations of the city relating thereto, he by implication agrees thereto, and his obligation rests upon contract, express or implied: Wagner v. Rock Island, City of (1893) 146 Ill. 139; Rockford Savings & Loan Ass'n v. Rockford, City of, supra.

■ A public service corporation may adopt reasonable rules and regulations for the conduct of its business, provided such are applicable to all consumers alike. A municipality which owns its own plant may establish reasonable rules, the same as a private company. Courts are invested with jurisdiction over

179

the question of whether any rule or regulation is fair and just, or unreasonable and oppressive. No distinction is drawn between a rule and regulation of a public service company and a similar rule, regulation, order, or ordinance of a municipality which has its own plant and is fulfilling the duties of a public service company. There is no arbitrary rule for testing the reasonableness or unreasonableness of such rules, regulations, orders, or ordinances. A rule requiring the consumer to bear the burden of making connections between his premises and the main has been held reasonable: McQuillin, Municipal Corporations, 3d ed., Vol. 12, p. 375–378, Vol. 13, p. 72.

In Prindiville v. Jackson (1875) 79 Ill. 337 the City of Chicago, through its board of public works, laid down a water main in a public street, and also laid down and paid for service pipes from the main, expecting to be reimbursed for the service pipes whenever the property owners desired to use them. The rules and regulations of the board of public works required the property owners, if they wished to use the water of the city in its main, to lay down at the property owners' expense the necessary service pipes from their lots to the main and connect the service pipes with the main. The petitioners wished to use the service pipes in front of their lots. The board declined until they reimbursed the city the actual cost of laying down the service pipes. They refused to make reimbursement and brought mandamus to compel the board to permit them to make connections with the service pipes. The question was whether they had a right to use the service pipes without paying their cost. The Court held not and reversed and remanded a judgment for the petitioners. The Court said:

"The charter of the city of Chicago provides, that 'the board of public works shall have exclusive

180

charge and superintendence of the sewerage and water works of said city.'

"Another section provides, 'that the board of public works shall have full power to regulate and control the manner of using the streets, alleys and highways and public places of the city, for the laying down of gas or water pipes and sewers, and determine the location thereof.'

"Here would seem to be power given to the board to provide rules and regulations for, and directions in detail as to the manner, etc., in which the citizen shall obtain water from the mains by means of service pipes, and the connecting of the same with the mains."

. . . . . .

"Such a rule and regulation of the board would be but just and reasonable. It would be but requiring that persons, desiring to use the water of the city flowing through the mains, in consideration of the special private advantage they would enjoy over and above the general public, should pay something additional in the way of providing, at their own expense, the service pipes to connect with the mains. It would be the just principle upon which special assessments on account of special benefits are founded."

. . . . . .

"We regard this rule and regulation as a just and reasonable one, and that the petitioners have no right to insist upon having the use of the service pipes without complying with such regulation."

In City of Wichita v. Wichita Water Co. et al. (1915) 222 F. 789, C. C. A. 8th, the City sued the defendant

181

water company to restrain it from refusing to connect with its mains the service pipes of inhabitants without their payment of charges therefor. The water company charged all consumers a reasonable price to put in and maintain connections of their service pipes with the mains and extending such pipes to the street line of the consumer's property. That was a part of its published rules and regulations and had been for nearly 30 years, and all such connections had during that time been paid for by the consumer. The Court affirmed a dismissal of the bill for want of equity and held that consumers are not entitled to have their service pipes connected with the water mains and extended to the curb or property line at the expense of the water company. The Court said, p. 795:

> "May the water company rightly charge the consumer for the reasonable cost of connecting the service pipes with its water mains and extending them to the curb line or property abutting upon the streets in which the mains are laid? The answer to this question must also be found in the terms of the ordinance contract. The ordinance does not require the water company to connect the service pipes with its mains free of charge to consumers, and the schedules of rates only fixes the maximum price that the company may charge for water actually furnished to consumers, and so long as such maximum rate is not exceeded, and the charge for connecting the service pipes with the mains is reasonable, the ordinance is not violated. Whether or not the water company shall furnish water to a consumer, or the consumer shall receive water from the water company, is purely a matter of contract between them."

The principle that lateral service pipes and fixtures from a street water main to the abutting premises may

properly be required to be installed, maintained, and repaired by or at the expense of the private abutting property owners, and that provisions of an ordinance or rule and regulation to that effect of the city or public service company are reasonable, and not contrary to law or public policy has been held and applied in Jackson v. Mayor etc. (1894) 61 N. W. 1030, N. D.; McClaugherty v. Bluefield Waterworks etc. Co. (1910) 68 S. E. 28, W. Va.; Fisher v. St. Joseph Water Co. (1910) 151 Mo. App. 530.

The principal case suggested by the plaintiff is Palmer v. Danville, City of (1894) 154 Ill. 156, 38 N. E. 1067. That involved an application in the County Court for confirmation of a special tax, or special assessment, levied by a City Council to pay the cost of putting in certain sewer and water service pipes for house connections with the mains in the street. The Court reversed a judgment confirming a special tax because the City had no power to levy such under the particular statute involved, because the ordinance embraced more than one improvement, and because the special tax had not been levied by any rate of equality by or in proportion to frontage, value, area, or otherwise of the abutting properties, but had been unequally and unjustly levied. The case at bar does not involve the installation or repair of water service pipes by means of special taxes or special assessments. If the installation or repair thereof may, under present statutes, be done by a city by that means, which we do not decide, the plaintiff refers us to no statute or case mandatorily requiring it be so done. The Palmer case is not in point here.

The plaintiff also relied on Consumer's Co. v. Hatch (1912) 224 U. S. 148, 56 L. Ed. 703, 17 Idaho 204. The Supreme Court of Idaho had held it was the duty of a public service water company, under its charter, to make water service pipe connections at its own ex-

pense, under the Idaho statutes in effect at the time of the company's charter, and under the Idaho cases determined prior to the charter, and the Supreme Court of the United States merely held that no right of the company under the United States Constitution had, under those circumstances, been infringed. The ordinance in the case at bar does not require the City to install or repair and maintain water service pipes at its expense, nor is there any statute or Illinois case to which our attention has been called that mandatorily so requires. The consumer may properly be required by ordinance to so pay the expenses of such service connections when the applicable statute so authorizes. The Consumer's Co. case is not here applicable. It is discussed at some length and distinguished in City of Wichita v. Wichita Water Co. et al. (1915) 222 F. 789, C. C. A. 8th.

██ ██ Under the foregoing statutes, or substantially similar predecessor statutes, the defendant City had the power "to make all needful rules and regulations" and to "make such rules and regulations . . . as the corporate authorities may deem necessary or expedient." By its ordinance of December 16, 1935 it made such rules and regulations. They are, by the terms thereof, a part of the contract with the plaintiff and every consumer, and the plaintiff and every consumer is governed by and subject thereto. Under such, all service pipes and fixtures must be installed and maintained at the expense of the property owners (which, we think, rather clearly means the abutting property owners or those served thereby), and must be repaired by them. The regular water rates of the defendant City, by stipulation, do not anticipate or include a charge for the installation or repair of service pipes from the main to the curb. By express contract, defendant's exhibit 1, his owner's application and guarantee of water bill, of October 30, 1953, or by

184

necessarily implied contract as a consumer, the plaintiff was subject to all reasonable rules and regulations relating to the water service of the City. We cannot say the rules and regulations, in the respect here concerned, are not needful, necessary, or expedient, or that the corporate authorities could not have reasonably considered them needful, necessary, or expedient. They appear to be reasonable, just, and fair. They do not appear to be unreasonable, or oppressive, or contrary to law, or contrary to any public policy expressed by the Legislature. Such appears to have been the administrative or business policy of the defendant City since 1935 and, by stipulation, the usual practice as to such matters. Evidently the rule, regulation, and policy are applicable to all consumers alike.

The judgment will, accordingly, be affirmed.

Affirmed.

SPIVEY, J. concurs.

WRIGHT, J. concurs.