EXPERT PAINTING, INC., Plaintiff and Counterdefendant-Appellee, *v.*
THE PERRIN CORPORATION, Defendant and Counterplaintiff-Appellant.

Third District   No. 80-211

Opinion filed February 23, 1981.

Fred Prillaman, of Mohan, Alewelt & Prillaman, of Springfield, for appellant.

Alan G. Blackwood, of Van Der Kamp, Crampton & Snyder, P. C., of Rock Island, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by the Perrin Corporation (hereinafter Perrin) from the judgment of the circuit court entered on behalf of the plaintiff-counterdefendant, Expert Painting, Inc. (hereinafter Expert).

In 1976, Perrin was the general contractor for the construction of the McDonough County Nursing Home in Macomb, Illinois. Expert was the painting subcontractor on that job under a written agreement between Expert and Perrin concerning the work to be done by Expert. Expert began work on the job on November 15, 1976, and continued to work until June of 1977. After considerable difficulties and disputes on the job concerning the progress and quality of Expert's work, Perrin terminated the contract on July 13, 1977. At the time, Perrin's position was that Expert had abandoned the job. Thereafter, Expert filed suit against Perrin, seeking recovery under the contract based upon Perrin's wrongful termination. A lien foreclosure action was also filed by Expert. Expert alleged that it had purchased materials for the job and that it had commenced work and was at all times ready, willing and able to perform its contract obligations. Expert sought $14,726 in damages, plus interest and costs.

Perrin filed an answer, denying Expert's allegations and alleging that its termination of the contract was justified because of Expert's failure to perform pursuant to the contract provisions. Perrin counterclaimed, asking $22,826.86, alleging that it was damaged in that amount by Expert's breach of contract. The damage figure was for materials and labor stated to be needed to complete Expert's duties and obligations under the original contract agreement with Perrin.

A bench trial was held in which the presidents of both companies, various workmen for both companies, and other persons connected with the construction project testified as to Expert's performance under the contract and related events at the project. The testimony on central issues concerning performance was contradictory, often directly so, as were the asserted conclusions to be drawn from that testimony. The trial court, noting that contradictory evidence and credibility questions abounded in the case, found for Expert Painting, in the amount of $12,490.50. It found for counterplaintiff Perrin, in the amount of $700, for heating expenses that Expert ought to have shared on the project. A judgment order cover-

ing the consolidated actions, in the amount of $11,790.50, was entered in September of 1979, in favor of Expert, and it is from that judgment and order that the defendant-counterplaintiff Perrin appeals.

Perrin argues that the trial court committed reversible error in preventing its counsel from fully and completely showing the bias and prejudice of Louis Weitekamp, the architect's representative on the job, who testified on behalf of Expert. An issue is also raised as to whether the trial court's decision is against the manifest weight of the evidence. A final issue is whether the court erred in failing to allow Perrin a substantial credit for the costs of completing the work that remained after Expert had been dismissed.

No useful or necessary purpose would be served by entering into a lengthy, detailed, recitation of the facts in the case. There is evidence in the record which would support the positions of both parties to the case, as was noted by the trial court in its findings of fact and as is substantiated by our review of the testimony and exhibits. Perrin's position, which finds some evidentiary support in the record, is that Expert had not fulfilled its obligations under the contract. There was evidence that Expert's work crew did not work diligently and that the work they did was not of workmanlike quality. Perrin points to evidence which indicates that there was substantial work to be done by Expert in June and early July 1977, at a time when Expert had no crew on the job. On the basis of Expert's delay, the asserted poor quality of workmanship, and its failure to progress in June and July, Perrin terminated the subcontract. Thereafter, the evidence indicates they hired another painting company to finish Expert's work and correct prior deficiencies.

On the other hand, and quite opposed to Perrin's position, there is considerable evidence in the record to support Expert's claims that their work was of reasonable quality and timeliness and that they had, in fact, substantially fulfilled their obligations under the contract at the time of their discharge. There is evidence that Expert was hampered on the job and their progress delayed as a result of deficiencies in the work of other trades, and as a result of moisture and temperature problems on the jobsite, for which they were not responsible. Their evidence indicated that the painting work was 80- to 90-percent completed at the time Perrin terminated the contract and that only relatively minor corrective work and some outside work needed to be done. It is obvious from the judgment entered and from the written findings of fact that the trial judge found Expert's evidence more substantial and believable.

The first issue raised by Perrin on appeal, and one that is central as well to the manifest weight issue, concerns the credibility of Louis Weitekamp, a witness for Expert. Weitekamp was the project representative for the architect, Phillips Swager Associates, on the McDonough

County Nursing Home project. As such, he was at the project site from one to three times per week and was familiar with most aspects of the project, including the work required of Expert under its contract with Perrin. As the architect's representative, it was his responsibility to review all work on the project, making the ultimate decision to accept or reject such work on behalf of the architect. In his testimony, Weitekamp stated his opinion, based upon his experience and observations, that Expert was doing its work in a good and workmanlike manner on this project. He testified to outside difficulties encountered by Expert which, in part, contributed to delays in the completion of their work. He pointed to both the delay by masonry and plastering contractors as well as moisture and temperature problems, which factors had also been testified to by other of Expert's witnesses. Weitekamp also provided key testimony favorable to Expert on the question of the seriousness of the punch list items. The punch list is a list of items which remain to be done by a contractor or which need to be redone by the contractor. Perrin contended that the existence of an extensive punch list for the painting work, along with Expert's failure to correct punch list items in a timely manner, constituted a material breach of the contract. Weitekamp, whose job it was to make out the punch lists on the job, testified that he did not consider the punch list items on the painting work a serious deficiency. He further testified that he was not concerned with the progress of Expert on the job and that they were performing properly. Weitekamp's testimony was highly regarded by the trial court in making its findings of fact. He found the testimony to be believable, in light of the other evidence in the record. There was considerable testimony to support both sides of this dispute, as already noted, and the trial court felt Weitekamp to be one of the more impartial witnesses.

Perrin, on appeal, argues that the court committed reversible error by preventing its counsel from fully and completely showing the bias and prejudice of Louis Weitekamp. Specifically, Perrin points to a sustained objection by Expert to the following question put to Weitekamp by Perrin's counsel:

"And as far as the relationship between you and Mr. Perrin, I'm not trying to characterize you, but it's true that throughout this project there was and continues to be an unusual amount of antagonism or bad feelings between the two of you."

The court sustained the objection, concluding that the question was beyond the scope of redirect. Perrin argues that this failure to permit it wide ranging inquiry into Weitekamp's bias and prejudice constituted reversible error.

■■ We find no error in the court's failure to permit the question on redirect, nor can we find that Perrin was unduly restricted in its attempts

to discredit Weitekamp's credibility. There was no reversible error in the court's ruling. The record reveals that counsel for Perrin was given ample opportunity to explore the bias and prejudice of Louis Weitekamp. It was established that Weitekamp had filed criminal battery charges against Don Perrin, president and sole shareholder in Perrin Corporation. Weitekamp testified at that trial against 'Perrin. The charges grew out of a dispute on the project here in question. It was also brought out, for the court's attention, that Weitekamp had cooperated with Expert's counsel in submitting to questioning preparatory to trial, while he had refused to discuss matters with Perrin's counsel. It was also brought out by Perrin counsel that there were interrelated issues in ongoing arbitration proceedings between the Public Building Commission and the Perrin Corporation. In short, the record shows that the trial court was fully apprised of the potential bias and prejudice Weitekamp might harbor against Perrin. The evidence of the battery charges and testimony in that trial was sufficient to indicate to any trier of fact that there was a certain amount of "antagonism and bad feelings" between Don Perrin and Louis Weitekamp. This is not a case where counsel for one side has been restricted unduly in showing the bias and prejudice of the other parties' witnesses.

■■ The real thrust of Perrin's argument about Weitekamp is that the court should not have relied upon his testimony at all, given his bias and prejudice against Perrin. Yet, as the court noted, most of those testifying at the trial had interests "in shading their testimony." The trial judge, in his written findings of fact, makes it very clear that he took into consideration all matters affecting credibility, as to all of the witnesses, but specifically with respect to Louis Weitekamp. After considering the credibility question, in light of his manner while testifying and the other evidence in the case, the trial court found Weitekamp's testimony to be reasonable and believable. Given the court's stated consideration of the credibility questions emphasized by Perrin, and given the support for his determinations of credibility in the record, we find no basis upon which to reverse his decision on the credibility of the witnesses.

■■ As to the second issue raised on appeal, the manifest weight issue, we have already noted that there was considerable testimony to support both parties' positions. When the evidence is disputed and contradictory, it is recognized that the trial court as trier of fact is in the best position to determine the weight and credibility to be given the evidence. In those situations, the findings of the trial court will not be disturbed unless they are found to be manifestly against the weight of the evidence. (*Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518.) We have fully reviewed the extensive record and the testimony of the witnesses, along with the court's findings of fact, and we find no basis upon which to reverse the decision and judgment by the trial court. That decision was not contrary to the manifest weight of the evidence.

■■■ The final issue is whether Perrin is entitled to a large credit for the costs it incurred in completing the painting work on the project. Perrin argues that it is so entitled, even if Expert is found to have substantially performed its contract. The only credit allowed by the trial court was for heating expenses, in the amount of $700, incurred while Expert was still on the job. No credit for the cost incurred in completing Expert's painting work was given by the court to Perrin. We find no error in the court's damage award. The court's decision and judgment was that Perrin had breached its contract with Expert by unjustifiably terminating it on July 11, 1977. The court found that Expert had substantially fulfilled its obligations under the contract and that it was ready and willing to tender full performance. Under the circumstances, Perrin cannot expect to be able to recover, against Expert, the costs Perrin had to expend to complete Expert's obligations under the contract, which obligations Perrin unjustifiably prevented Expert from fulfilling itself. (See *Yonan v. Oak Park Federal Savings & Loan* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773; *Watson v. Auburn Iron Works* (1974), 23 Ill. App. 3d 265, 318 N.E.2d 508.) One cannot breach a contract and then expect the injured party to pay for costs incurred in fulfilling contract obligations it was prevented from fulfilling itself. This is especially true in this case where the trial court found that the work done to complete the painting was far in excess of what was necessary. The court, in so stating, noted that the company Perrin hired to complete Expert's work was owned by a family partnership, the partners being the Perrin children. There was no error in the court's failure to award Perrin a substantial setoff for the costs in completing the painting work on the project.

For the reasons stated, the judgment of the Circuit Court of McDonough County is affirmed.

Affirmed.

BARRY and HEIPLE, JJ., concur.