JAMES DENTON *et al.*, Plaintiffs-Appellants, *v.* ESLIE O. HOOD, Defendant-Appellee.

Third District   No. 3—83—0554

Opinion filed March 27, 1984.

William G. Schick, of Arndt, Schubert, Andich, Williams & Schick, of Rock Island, for appellants.

Theodore A. Jackson, of Jackson & Pulsifer, of East Moline, for appellee.

PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiffs James Denton and Ruth Denton appeal from the judgment of the circuit court of Rock Island County finding in favor of defendant Eslie Hood in their breach of contract and fraud action against Hood. In 1979, the Dentons entered into an installment agreement for warranty deed with Eslie Hood, for the purchase of some real estate in Rock Island County. In November 1982, they filed the

instant action against Hood, alleging that he was guilty of fraud and misrepresentation at the time of the agreement. Reliance, for their contract theory, was based upon paragraph 14 of the articles of agreement for warranty deed, which paragraph stated:

> "Seller's Warranty. The seller, as owner of the premises, warrants that no notice has been issued and received by the seller or seller's agent from any city, village or other governmental authority of a dwelling code violation, which presently exists in any dwelling structure on the premises covered by this contract."

The underlying basis for both theories was the fact that Hood, prior to the sale, had received a notice that the garage structure on one parcel was in violation of the county zoning, and had not conveyed that information to the buyers. The trial court heard the evidence, some of which was conflicting, and found for the defendant Hood on both theories. The Dentons appeal and contend that the court erred in its construction of paragraph 14 of the contract and the statutory provision upon which it is based. (Ill. Rev. Stat. 1981, ch. 29, par. 8.22.) They also argue that the court erred in concluding that the evidence was insufficient to prove breach of contract or fraud on Hood's part.

The record reveals that the subject real estate has been zoned R-1 residential since before the time Eslie Hood acquired the property. After his acquisition, Hood submitted blueprints for a single-family residential structure to be built on one parcel of the property. A building permit for the construction of a residence on that property was issued to him by appropriate county authorities. However, the structure built on the property, while in accordance with the outside dimensions of the residence blueprints, was never finished as a residence. Instead, Hood utilized the building as a garage, for the storage of equipment and maintenance work on equipment. In January 1979, the office of zoning code enforcement for the county of Rock Island sent Hood a letter about the property. The letter indicated that code enforcement had examined the property and discovered that the building was being used to store automobiles. It advised Hood that the property was zoned R-1 single-family residential, and that the use of the building as a storage facility or body shop was not a permitted use under that zoning. Hood was informed that the storage of vehicles constituted a violation of county zoning resolutions. It does not appear, from the record, that any further action was taken subsequent to the letter, by either Hood or the county. At least until James Denton took possession, the *status quo ante* prevailed.

Also, in 1979 plaintiff James Denton, having heard the "garage"

property might be for sale, contacted defendant Hood about possible sale. Hood was interested in selling both the garage property and another piece of property, across the road from the garage, which had a residence on it. The Dentons and Hood reached an agreement on a purchase price of $60,000 for the two properties. Testimony from the parties about the conversations concerning the two properties was somewhat contradictory. James Denton testified that he told Hood that he wanted to use the garage to work on his cars. When the two walked through the garage, Denton noticed the storage use made of it by Hood. According to Denton, Hood told him he could use the property to work on his cars in the garage. Eslie Hood admitted that he probably did tell James Denton he could work on his cars there, since Hood himself used the garage to work on his trucks and equipment. Hood also testified, however, that he did tell Denton that the property was zoned single-family residential. While admitting that he did not tell Denton that he had to build a house on the property, he maintained that Denton was informed about the zoning classification. Hood also gave Denton the original blueprints for the house and other pertinent documents. Hood also testified that, aside from the letter, no one ever bothered him about his working on the machinery in the garage. It was also established that at no point during their conversations did Denton inquire about zoning, or zoning violations, and Hood did not mention the previous notice of violation received from the county zoning office.

Testimony from zoning authorities indicated that the use of the property as a garage, for working on autos or other equipment, was contrary to the residential zoning of the area, and that such use would only be proper as an accessory use to a residence on the property. Denton testified that he did not have the financing to complete the residence structure so as to comply with zoning and be permitted to work on his cars on the property.

The articles of agreement for warranty deed between James Denton, his mother, Ruth, and Eslie Hood were signed, and James moved into the house across the street and began working on cars on the garage property. In June of 1980, the code enforcement officer sent him a letter indicating that the presence of unlicensed and inoperable vehicles on the property was in violation of the county zoning ordinance respecting the property. The letter to Denton indicated that further inspections would follow to determine if the violations had been cured. At about this time, faced with having to discontinue using the garage for his automobile work, Denton contacted Hood. Through his attorney, Denton demanded a refund from Hood of all moneys paid by the

Dentons, being $29,828.61, toward the purchase of the property under the contract for deed. Hood refused to make any refund, and this suit followed.

Other pertinent evidence before the court indicated that the Dentons had made all payments required under their purchase contract, up to the date of demand for refund, although the timeliness of those payments had not been in strict accordance with the provisions of the contract.

The trial court in this bench trial found in favor of the defendant Hood. The court concluded that paragraph 14 of the contract was not intended to cover zoning violations, but rather different types of dwelling code violations. The court also found that the parties had examined the land without representation or inquiry into the legality of a commercial use, and that fraud, either by express statement or by concealment, had not been shown by clear and convincing evidence. From the findings and the judgment of the court, plaintiffs appeal.

■ The first issue is whether the court correctly determined that paragraph 14 of the contract was not intended to include, as dwelling code violations, the zoning violation notice received by Hood prior to the sale to the Dentons. We have set forth that provision previously, and, as both parties accept, the provision and its warranty were included so as to comply with section 2 of "An Act relating to installment contracts to sell dwelling structures." (Ill. Rev. Stat. 1981, ch. 29, par. 8.22.) Section 2 states:

> "After the effective date of this Act, any installment contract for the sale of a dwelling structure shall be voidable at the election of the buyer unless there is attached to the contract or incorporated therein a certificate of compliance, or in the absence of such a certificate (i) an express written warranty that no notice from any city, village or other governmental authority of a dwelling Code violation which existed in the dwelling structure before the installment contract was executed had been received by the contract seller, his principal or his agent within 10 years of the date of execution of the installment contract, or, (ii) if any such notice of violation had been received, a list of all such notices so received with a detailed statement of all violations referred to in such notice. The requirements of this section cannot be waived by the buyer or seller." (Ill. Rev. Stat. 1981, ch. 29, par. 8.22.)

"Dwelling structure" is defined by the statute as "any private home or residence, or any building or structure to be occupied or resided in by 12 or less family units." (Ill. Rev. Stat. 1981, ch. 29, par. 8.21(b).)

The Act defines "dwelling code" as:

> "any municipal or county ordinance, building code, or law establishing construction, plumbing, heating, electrical, fire prevention, sanitation or other health and safety standards applicable to dwellings." (Ill. Rev. Stat. 1981, ch. 29, par. 8.21(c).)

Statutory provisions are to be construed in accordance with the plain meaning of the language utilized by the legislature, and where the language is unambiguous, a court ought not restrict or enlarge upon the legislative intent as expressed in the language used. (*Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 133, 302 N.E.2d 313.) We find the statutory provisions to be unambiguous and not applicable in the instant case in the manner suggested by appellants. Initially, it must be noted that the garage property, while originally designed as a residence, had not been finished as a residence, nor was it used as a residence. On the facts, it does not come within the statutory definition of "dwelling structure," as incorporated into the contract. Furthermore, "dwelling code" has a narrower scope, as defined in the statute, than argued by appellants. The focus in the statute is upon health and safety standards as applicable to dwellings, whether relating to construction, plumbing, heating, electrical, fire or sanitation. County ordinances are encompassed by the statutory provisions, but only those ordinances relating to health and safety standards for dwellings. The violation of which Hood was notified related to an impermissible use of the property within its residential zoning classification. It did not relate to any violation of health and safety standards for the structure. We do not believe that the zoning violation such as found in this case was intended by the legislature to be covered by section 2 of the Act. The plain language of the statute indicates a narrower focus, one directed toward the safety and habitability of residential dwellings. A purpose behind the statute is to require any such violations to be divulged, and part of the reasoning is that it is burdensome and difficult for a purchaser to obtain such information from the variety of code enforcement agencies potentially involved. (See *Shanle v. Moll* (1975), 25 Ill. App. 3d 113, 116, 323 N.E.2d 148.) With respect to information on zoning classification and permissible uses, such information is readily available at one location, the zoning office of the applicable governmental unit.

In conclusion, we find no error in the court's construction of paragraph 14 of the contract, as viewed within the context of the applicable statutory provisions. There was no breach of the warranty contained in the contract by virtue of Hood having previously received the notice of zoning violation. Accordingly, we turn next to the ques-

tions of fraud and misrepresentation.

The Dentons contend that the court erred in its finding that fraud had not been shown by clear and convincing evidence. As already noted, however, the evidence respecting the conversations between the parties prior to execution of the contract was contradictory. It is axiomatic that the trial judge, as the fact finder, was in the best position to determine questions of credibility and weight. (*Expert Painting v. Perrin Corp.* (1981), 93 Ill. App. 3d 683, 417 N.E.2d 839.) The record does not establish that Hood made any express warranties to Denton concerning the legality of permissible uses. Hood indicated that he told Denton that the property was zoned single-family residential. He also gave him the pertinent blueprints and documents pertinent to the garage property. Hood's statement to Denton that Denton could use the garage property to work on automobiles was not made in the context of a discussion of permissible zoned uses, but rather after Denton's noting that the property had been used by Hood for storage and work. While Hood had received a notice of violation about his use of the property, he had apparently continued to use the property for storage without consequence. Moreover, Denton never specifically inquired about zoning, permissible uses under residential zoning, or prior zoning violation notices. Given the contradictory evidence, and the circumstances of the conversations, we do not believe the court erred in failing to find that plaintiffs had proven the requisite *scienter* by clear and convincing evidence. While fraud by concealment is sufficient to recover on a fraud theory, the court's finding that the evidence did not establish intentional concealment is supported in the record. We will not overturn the findings of the court with respect to the weight and credibility of the evidence.

For the reasons stated, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HEIPLE and STOUDER, JJ., concur.