CLARENCE B. SHIPPEY *et al.*, Plaintiffs-Appellees, v. ANNA TRAUB *et al.*, Adm'rs of the Estate of Emma Grace Freeman, Deceased, *et al.*, Defendants (Walter Rebholz *et al.*, Defendants-Appellants).

Third District   No. 3—84—0709

Opinion filed November 8, 1985.—Rehearing denied December 19, 1985.

Donald D. Knuckey, of Henry, for appellants.

Robert A. Barnes, Jr., of Barnes & Barnes, of Lacon, for appellees.

JUSTICE WOMBACHER delivered the opinion of the court:

Walter Rebholz, Richard Rebholz, William Rebholz, Jim Rebholz, John Rebholz, Royal Rebholz, Donald D. Rebholz, Kenneth Rebholz, Jane King, Rose Colwell, Wayne Rebholz, Lettitia Weitzel, Steven Rebholz, Danny Rebholz, Joseph Rebholz, Melina Rebholz and Andrew Rebholz, the distributees of the estate of Emma Grace Freeman, deceased, appeal from the summary judgment entered for the plaintiffs, Clarence Shippey and Emily Shippey. The co-administrators of the Freeman Estate, Anna Traub and Henry Traub, were defaulted and are not parties to this appeal.

The issues on appeal, are first, whether section 2 of "An Act relating to installment contracts to sell dwelling structures" (the Act) rendered the installment contract between the Traubs and the Shippeys voidable (Ill. Rev. Stat. 1983, ch. 29, par. 8.22); and secondly, whether the defendants properly forfeited the contract or the plaintiffs successfully and rightfully avoided the contract.

On July 28, 1981, the Shippeys agreed to purchase (the agreement) the former residence of Emma Grace Freeman, deceased, from the Traubs for $69,500. The Shippeys agreed to enter into possession and pay $20,000 upon execution of the agreement and the remainder in subsequent annual installments of $9,900 including interest at 10% per annum, due on the first day of August of 1982 and each ensuing year until 1986 when the final payment was due. The agreement also provided that if the Shippeys' payments remained due for at least 30 days, then Traubs would have the right to treat the agreement "as at an end and to re-enter and regain possession," subject to statute. The agreement also stated that the Shippeys had inspected the premises and were satisfied with the present condition, and that the Traubs warranted that the plumbing and heating would be in proper working

order (the warranty).

On October 13, 1982, the court approved the irrevocable settlement agreement between the Traubs, the distributees, Robert Rebholz, Peggy Hall and Rose Hall. Therein, the Traubs assigned their interest in the agreement in exchange for being held harmless and not having to defend any litigation. The parties acknowledged that the August 1982 installment had not been paid; that the status of the vacant residence was in dispute; and that due to the forfeiture, litigation was contemplated. Robert Rebholz, Peggy Hall and Rose Hall are not parties to this appeal.

On October 18, 1982, the distributees sent the Shippeys a 30-day notice that they intended to file a forcible entry and detainer action.

On December 1, 1982, the Shippeys demanded a down payment refund from the Traubs when they filed their complaint for rescission wherein the Shippeys stated that they had already surrendered possession and elected to rescind the agreement. In count I, the Shippeys stated that the Act rendered the agreement voidable. In count II, the Shippeys stated that when an open cesspool on the adjoining premises contaminated their well and made them ill, the Traubs breached the warranty and violated public health standards.

On December 27, 1982, the distributees petitioned and were subsequently allowed to intervene. The distributees admitted that they had regained possession but denied that the agreement was voidable; that they had breached the warranty; or that they had received either a refund demand or a notice of the Shippeys' election to rescind. The distributees affirmatively alleged that on approximately August 1, 1982, when an installment was due, the Shippeys abandoned the premises. Since the installment remained due for more than 30 days, the Shippeys were in default and their contractual rights were terminated. Therefore, the distributees argued, they should be allowed to retain the down payment as damages.

The court denied the distributees' motion for summary judgment on count II, which alleged that in February of 1983, a water sample from the residence was satisfactory. The Shippeys countered with the assertion that in April of 1981, bacteria was present in the water. The distributees moved to strike the report. The motion for summary judgment and motion to strike were denied on July 30, 1983.

Meanwhile, the Shippeys filed a motion for summary judgment which alleged that pursuant to the voidable agreement, they were entitled to a full refund, and in response to interrogatories, alleged that in May they met with the Traubs several times to discuss the water pollution and to demand a refund if the problems were not corrected.

The Shippeys stated that they advised the Traubs in June of 1982 that they were vacating the premises, and thought that the Traubs repossessed the residence in July of that year.

On August 22, 1984, the court allowed plaintiff's motion for summary judgment. This is the order appealed from by distributees. The court ruled that the Shippeys were entitled to recover $16,150, which equaled their $20,000 down payment less $3,850, the fair rental value for the time period the Shippeys occupied the premises.

On appeal, the parties stipulate that the agreement is subject to but did not comply with the Act. However, the parties disagree as to the impact of their stipulation.

The Act, as amended, provides in part that an installment contract for the sale of a residence shall be voidable at the buyer's option (instead of invalid) unless the seller attaches a list of violations or a certificate of compliance or an express written warranty that no notices of dwelling code violations were received within the past 10 years. Neither buyer nor seller may waive the requirements. (Ill. Rev. Stat. 1983, ch. 29, par. 8.22.) A dwelling code is any municipal or county ordinance, building code, or law establishing sanitation or other health and safety standards applicable to dwellings. Ill. Rev. Stat. 1983, ch. 29, par. 8.21.

■■ The unambiguous statutory provisions focus upon health and safety standards applicable to dwellings and are to be construed in accordance with their plain meaning. Clearly, the Act requires that safety and habitability violations be divulged (*Denton v. Hood* (1984), 122 Ill. App. 3d 813, 461 N.E.2d 1069), not to force a seller to comply with nonexistent building codes but simply to require the seller to furnish the information to avoid a record search for violations or an unnecessary inspection. (*Shanle v. Moll* (1974), 25 Ill. App. 3d 113, 323 N.E.2d 148.) Failure to comply with the nonwaivable conditions of the Act renders the contract voidable at the buyer's option. (*Mack v. Seaman* (1983), 113 Ill. App. 3d 151, 446 N.E.2d 1217.) That result is consistent with the legislative intent, since the statutory language carves no exemptions nor provides for waiver for residences subject to neither municipal nor county sanitation, health or safety standards.

■ The agreement in the cause at bar, therefore, is subject to rescission. The issue, then is whether the distributees properly forfeited the contract or whether the Shippeys successfully exercised their right to avoid the contract. In support of the propriety of the forfeiture pursuant to the contract, the distributees assert the following. The Shippeys abandoned the residence and defaulted by failing to pay the August 1982 installment. Therefore, the distributees took posses-

sion and, believing that no formal declaration of forfeiture was required, rightfully considered the agreement terminated. Consequently, there was no agreement for the Shippeys to avoid.

The Shippeys, on the other hand, contend that the distributees could not forfeit the agreement which was void from its inception. However, we find that the agreement was not *void*, but only *voidable*, and only the Shippeys could avoid the contract under the statute.

The trial court implicitly ruled that the Shippeys had rightfully avoided the agreement. To resolve the disputed issue and thus to determine the propriety of the court's summary judgment, we must examine the pleadings and admissions to be sure that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lawrence v. Rubio* (1980), 85 Ill. App. 3d 472, 406 N.E.2d 946.

No material facts are disputed. Therefore, we need only determine whether the Shippeys were entitled to judgment as a matter of law.

█ If a valid contract provides for forfeiture and the buyer is actually in default (*Kirkpatrick v. Petreikis* (1976), 44 Ill. App. 3d 575, 358 N.E.2d 679), then the court will strictly and narrowly construe the forfeiture clause against the party seeking to enforce it, but still give effect to the contract if the forfeiture has been declared in compliance with the contract. *Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 458 N.E.2d 616.

In July of 1981, the parties agreed that an installment remaining due for more than 30 days would trigger the distributees' right to treat the agreement as terminated, and to re-enter and regain possession of the premises, as if the agreement had never been made, subject to the forcible entry and detainer statute. The distributees also had the option to demand the entire principal balance remaining due.

When the Traubs assigned those contractual rights to the distributees on October 13, 1982, the distributees acknowledged that the August 1982 installment had not been paid. The residence was vacant, but to resolve its uncertain status, the distributees contemplated filing suit against the Shippeys to forfeit the agreement and to recover the real estate. Shortly thereafter, the distributees sent the Shippeys notice in Colorado that they intended to file suit to recover possession of the premises, even though the premises were already vacant. The distributees, contrary to their argument on appeal, recognized that a forcible entry and detainer action would resolve the status of the real estate. At that time, they did not, nor do we now, interpret the agreement as automatically providing for forfeiture without either no-

tice or compliance with the forcible entry and detainer act. The distributees neither declared a forfeiture nor filed suit to recover possession of the premises nor contemplated a lawsuit based on the Act. The distributees took no action to properly forfeit the contract. Thus, we can only presume that the agreement was in effect on December 1, 1982, when the Shippeys filed suit to rescind the voidable agreement. Undisputably, on that date, the Shippeys exercised their statutory right to avoid the agreement.

■ ■ If a valid contract exists when the buyer rightfully seeks to avoid it, then the court may rescind the contract and restore the parties to their original status by awarding the buyer a refund of monies paid pursuant to the contract reduced by the fair cash rental value for the Buyer's possessory period. *Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 458 N.E.2d 616.

Therefore, the court appropriately granted the Shippeys summary judgment.

Accordingly, the judgment of the circuit court of Marshall County is affirmed.

Affirmed.

HEIPLE, P.J., and BARRY, J., concur.