GALEN BAKER *et al.*, Plaintiffs-Appellees, v. THE CITY OF BELLE-VILLE, Defendant-Appellant.

Fifth District   No. 5—86—0704

Opinion filed October 7, 1987.

G. Edward Moorman, of Williamson, Webster, Groshong, Moorman & Falb, of Alton, for appellant.

P. K. Johnson, Sr., and P. K. Johnson, Jr., both of Johnson & Johnson, of Belleville, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Galen and Agnes Baker (the property owners) filed an action in the circuit court of St. Clair County to obtain reimbursement from the city of Belleville (the city) for expenses incurred in repairing the sewer line which connected the plumbing in their home to the sewer trunk line adjacent to their property. On cross-motions for summary judgment filed by the respective parties, the circuit court entered judgment for the property owners and against the city in the amount of $6,119.61, plus costs. The city now appeals. We affirm.

The material facts of this case are not at issue. The parties agree that the property owners own a house on a lot which abuts West Main Street in Belleville. That street was the subject of a statutory dedication pursuant to what is now section 3 of "An Act to revise the law in relation to plats" (Ill. Rev. Stat. 1985, ch. 109, par. 3), and title to it was thus conveyed to the city in fee simple. See *Water Products Co. of Illinois, Inc. v. Gabel* (1983), 120 Ill. App. 3d 668, 672, 458 N.E.2d 594, 597.

A sewer trunk line belonging to the city's sewerage system runs beneath the center of West Main Street. A sewer lateral line extends under the street from the trunk line to the property owners' lot, where it connects to the plumbing in the property owners' house. This sewer lateral line is used exclusively by the property owners.

Although affidavits submitted by the city engineer and the superintendent of sewers of Belleville on behalf of the city indicate that the sewer lateral line "is not owned, maintained or controlled" by the city, the city concedes that neither party has any knowledge as to who paid for the original construction of the line, no documentary evidence of title or ownership of the line exists, and there is no known record of any easement having been granted to the property owners for maintaining a sewer lateral line under West Main Street. The city further concedes that neither party has knowledge of any previous repairs or maintenance of the line.

In February of 1985, a problem developed with that portion of the sewer lateral line situated under West Main Street. The city granted the property owners a permit to dig under the street to determine the damage and, if necessary, repair it. The property owners discovered that certain tiles in the lateral there were broken and that the lateral was obstructed under the street near the curbline by the property owners' lot. The property owners requested that the city repair the tiles and clear the obstruction, but it refused to do so. The property owners then retained a private contractor, who performed the necessary repairs, removed the obstruction and restored the street to its prior condition at a cost of $6,119.61. When the city rejected the property owners' claim for reimbursement of that sum, the property owners commenced this litigation.

The property owners' cause was called for trial on May 1, 1986, but the city failed to appear. After receiving an affidavit from the property owners setting forth their damages, the circuit court thereupon entered a default judgment in favor of the property owners and against the city. The city then made a timely motion to have the default judgment set aside. That motion was granted. Shortly thereaf-

ter, the city filed its motion for summary judgment which was followed, within a matter of days, by a cross-motion for summary judgment by the property owners. As we have previously indicated, the trial court disposed of these motions by granting summary judgment in favor of the property owners and against the city. Upon denial of the city's motion to vacate that judgment, this appeal followed.

■ The city contends that the trial court erred in holding it liable for expenses incurred by the property owners in repairing the sewer lateral line because the property owners had exclusive use of that line. The city cites miscellaneous foreign authorities in support of its claim. None of those authorities, however, has any direct bearing on the situation now before us. As best we can determine, the city's argument is founded simply upon its conception of how the equities between the parties should be balanced. The city's idea, apparently, is that because only the property owners used this particular lateral line, only the property owners should pay for its repair. One problem with this approach is that it assumes that the property owners and not the city were responsible for the damage which necessitated the repairs. The record will not support such an assumption. All we know for certain is that the problems with the lateral line were found entirely under the city's street. If anything, this would seem to suggest that those problems were actually attributable to the city, not the property owners.

The city argues, in the alternative, that the property owners were under a duty to repair the lateral line by virtue of a municipal ordinance. We disagree. To be sure, a property owner may properly be required by municipal ordinance to pay the expenses of repairing and maintaining service connections to a municipal utility when an applicable State statute so authorizes. (*Rosborough v. City of Moline* (1961), 30 Ill. App. 2d 167, 184, 174 N.E.2d 16.) Section 11—141—7 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—141—7), governing rates and charges for use of municipal sewerage systems, provides such authority here. Section 11—141—1 of the Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—141—1) expressly defines sewerage systems to include sewer lateral lines.

Consistent with its statutory authority, the city has promulgated a detailed ordinance controlling the use of public sewers and establishing charges for such use. That ordinance provides, *inter alia*, that owners of property abutting a municipal sewer line must, under certain circumstances, install toilet facilities which connect to the public sewer. It further provides that all costs and expenses incidental to such installation and connection are to be borne by the owner, and it

sets forth charges to be paid for sewer service by the owner or occupant of the property or user of the system after such installation and connection have been made. Nothing in the ordinance, however, expressly imposes on a property owner a separate and additional liability for repairs to the lateral lines which might become necessary once the lines have been installed and connected and service has been commenced.

The city attempts to avoid this omission by arguing that such liability can be inferred from the text of the ordinance as a whole. Specifically, the city claims that because the ordinance requires a property owner to pay for installation and connection of lateral lines to and for subsequent use of the sewer system, it logically follows that the ordinance should be construed as also requiring a property owner to pay additional charges for repair of those lines. This is not necessarily so. The city may, for example, have intended that the periodic service charges be set at a level which would already take into account the projected additional costs of repair to the lateral lines. The city clearly had the authority to include such additional costs in establishing its rates and charges. (See Ill. Rev. Stat. 1985, ch. 24, par. 11—141—7.) If this were done, requiring the property owner to bear an additional expense for repair costs now would make no sense, for it could mean that the property owner would, in effect, end up paying twice for the repairs.

A more fundamental flaw in the city's argument is that it ignores the proposition that statutory provisions are to be construed in accordance with the plain meaning of the language utilized by the legislature. (*Denton v. Hood* (1984), 122 Ill. App. 3d 813, 817, 461 N.E.2d 1069, 1072.) Where, as here, the language is unambiguous, a court ought not restrict or enlarge upon the legislative intent as expressed in the language used. (122 Ill. App. 3d 813, 817, 461 N.E.2d 1069, 1072.) Correspondingly, a court may not adopt an interpretation of the statute which would have the effect of making the legislature say what it has not said. (*Davis v. Bughdadi* (1983), 120 Ill. App. 3d 236, 241, 458 N.E.2d 177, 180.) If the city had intended to require property owners to pay the costs of repairing lateral lines, it should have so specified in the ordinance. In *Rosborough v. City of Moline* (1961), 30 Ill. App. 2d 167, 173, 174 N.E.2d 16, for example, the applicable municipal ordinance contained a separate provision specifically dealing with this subject. As we have noted, the ordinance here, which has 33 sections covering 18 single-spaced pages, contains no comparable provision. We cannot now rewrite the ordinance for the city.

Having undertaken to build and maintain a municipal sewer system, the city is under a duty to keep that system in good repair. (See *City of Chicago v. Seben* (1897), 165 Ill. 371, 379, 46 N.E. 244.) Absent an appropriate ordinance, it has no authority to require that the cost of such repair be borne by abutting property owners. When the property owners here were forced to expend funds to repair the lateral line under the city street by their property, they were thus carrying out what was the city's responsibility. Their actions conferred a benefit on the city, "thereby creating a quasi-contract under which [they were] entitled to recover the cost of such repairs." (11 E. McQuillen, Municipal Corporations, *Sewers and Drains* sec. 31—33, at 236 (3d ed. 1983).) Accordingly, the judgment of the circuit court of St. Clair County in favor of the property owners and against the city is affirmed.

Affirmed.

KARNS, P.J., and LEWIS, J., concur.