(No. 32185.—

LeRoy G. Charles *et al.*, Appellants, *vs.* The City of Chicago, Appellee.

*Opinion filed Nov. 20, 1952—Rehearing denied January 19, 1953.*

LeRoy G. Charles, of Chicago, for appellants.

John J. Mortimer, Corporation Counsel, of Chicago, (L. Louis Karton, and Harry H. Pollack, of counsel,) for appellee.

Litsinger, Gatenbey & Spuller, of Chicago, (Andrew W. Gatenbey, and John D. Clancey, Jr., of counsel,) for *amicus curiae*.

Mr. Justice Bristow delivered the opinion of the court:

Plaintiffs, operators of a retail live-poultry business in Chicago, instituted proceedings to enjoin defendant from enforcing a municipal ordinance regulating the handling and slaughtering of live poultry in retail food establishments, on the ground that the ordinance is unconstitutional. The circuit court of Cook County held unconstitutional only certain provisions with reference to the keeping of records, but sustained the constitutionality of the remainder of the law, and dismissed plaintiffs' complaint for want of equity. The court signed a certificate of importance, and plaintiffs have appealed directly to this court on the ground that the cause involves ·the constitutionality of a municipal ordinance.

In determining whether the circuit court erred, the essential issue presented by this appeal is whether the ordinance effects an arbitrary classification by discriminating against retail live-poultry dealers in violation of the rights guaranteed by section 2 of article II and section 22 of

article IV of the Illinois constitution, and the fifth and fourteenth amendments of the Federal constitution.

In their complaint to enjoin the enforcement of the ordinance, plaintiffs allege that the operations of killing, bleeding, plucking, drawing and eviscerating poultry, which it performs, are also performed by wholesale poultry dealers and to a great extent by many retail dressed-poultry dealers. Consequently, plaintiffs argue that the sanitation requirements of the ordinance, apparently designed in the interests of public health, should apply to all businesses which perform similar operations, and by omitting from its coverage the wholesale poultry dealers and the retail dressed-poultry dealers the ordinance arbitrarily discriminates against the retail live-poultry dealers.

Defendant, city of Chicago, in support of the constitutionality of the ordinance, urges first that it was enacted pursuant to proper legislative authorization in the Revised Cities and Villages Act, and that the ordinance reasonably regulates the retail live-poultry business to effectuate the statutory purpose of protecting the public health. Furthermore, defendant argues, the classification is not arbitrary or discriminatory, inasmuch as the public health is affected differently by the operations of the retail live-poultry dealers than it is by the operations of the wholesale live-poultry dealers or of the retail dressed-poultry dealers.

In adjudging the constitutionality of this ordinance we shall consider the provisions of the ordinance, the statutory authority for its enactment, the effect on public health of the operations of the business regulated as compared with similar operations performed by businesses not covered by the ordinance, and then ascertain whether the classification contained therein is arbitrary or discriminatory.

The ordinance inserts sections 95-29.1 to 95-29.8 into the Municipal Code of the city of Chicago, and amends sections 130-10 and 130-13 of the Code. It is declared unlawful for any person to sell at retail, or to slaughter

for sale at retail, any live poultry or live fowl without a license, and it is provided that no license shall be issued unless the premises in which the poultry is slaughtered meet certain specified requirements.

For killing and dressing poultry there must be a separate room with a floor of "cement, concrete or other approved water tight nonabsorbent material, so graded and drained as to discharge all liquid matter into properly trapped sewer or cesspool connected drains." The ceilings must be at least eight feet above the floor and must be "of a smooth, hard impervious material free from crevices, cracks, ledges or projections." The walls must be of some impervious material, and the junctions with the ceilings and floors shall be made with a six-inch sanitary cove base of glazed tile or brick.

The room must be provided with a "killing trough" of certain dimensions and of certain hard, smooth-surfaced material, and shall discharge over properly trapped and sewer-connected drains. Proper receptacles shall be provided for all refuse material, and all equipment shall be of some impervious and readily cleanable material. Moreover, this room and all equipment therein shall be cleaned each day after the slaughtering for the day has been completed.

It is further provided that there shall be adequate ventilation, an adequate supply of running hot water under pressure, that all doors and other openings shall be properly screened, that the toilet rooms shall not open directly into the preparation room, that the empty crates shall be disinfected and cleaned so that no odors or nuisances are created by the storage of the crates, and that refuse must be removed daily.

This ordinance was enacted pursuant to certain provisions of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1949, chap. 24,) whereby municipalities are authorized: "To fix the amount, terms and manner of issuing

and revoking licenses" (par. 23-5;) "To define, prevent and abate nuisances" (par. 23-61;) "To regulate the sale of all beverages and food for human consumption; to locate and regulate the places where and the manner in which any beverage or food for human consumption is sold" (par. 23-63;) "To provide for and regulate the inspection of all food for human consumption" (par. 23-64;) "To do all acts and make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease" (par. 23-81;) "To prohibit any offensive or unwholesome business or establishment within the municipality" (par. 23-89;) "To compel the owner of any grocery, cellar, * * * or other unwholesome or nauseous house or place, to cleanse, abate or remove the same, and to regulate the location thereof" (par. 23-90;) "To pass all ordinances and make all rules and regulations proper or necessary, to carry into effect the powers granted to municipalities, with such fines or penalties as may be deemed proper." (par. 23-106.)

The controverted ordinance herein is designed to protect public health by imposing more stringent sanitation requirements upon a business involving the sale of food for human consumption, and one which may also be offensive, and may be predicated upon any one of the several foregoing powers. However, this ordinance, though based upon proper statutory authority, and reasonably designed to protect the public health, cannot, under the rights guaranteed by the Illinois and Federal constitutions, effect an arbitrary discrimination against the class upon which it operates by omitting from its coverage persons and objects similarly situated. *Marallis* v. *City of Chicago,* 349 Ill. 422; *People* v. *Weiner,* 271 Ill. 74.

Statutory classifications can properly be sustained only where there are real differences between the classes, and where the selection of the particular class, as distinguished from others, is reasonably related to the evils to be remedied

by the statute or ordinance. *Josma* v. *Western Steel Car and Foundry Co.* 249 Ill. 508.

The classification made by the ordinance is between the retail live-poultry dealers as the class regulated, and the wholesale live-poultry dealers and retail dressed-poultry dealers as the class outside the scope of the ordinance. Although it may be argued that since the ordinance is designed to protect public health, the sanitation requirements respecting the handling and slaughtering of live poultry and other fowl should apply to all businesses which perform similar operations, and not merely the retail live-poultry dealers, however, that rationale reflects an incomplete analysis of the manner and extent to which the public health is affected by the respective classes.

In the preamble of the controverted ordinance the justification for the classification is set forth. It is stated, in substance, that the handling and slaughtering of live poultry and other fowl in retail food establishments requires that such poultry and fowl be delivered in crates and other receptacles, which are deposited upon the sidewalks of the city, and, when emptied, remain thereon for considerable periods of time; and also that the operations require that the poultry and fowl be opened, cleaned and plucked, whereby the refuse, blood and feathers remain for considerable periods of time, all of which creates a nuisance and attracts rats and other vermin, affecting health and causing other hazards.

The potential health hazards of this business, warranting special regulation, have been recognized by courts as well as by the municipal council. In *Roich* v. *Board of Commissioners,* 11 N. J. Misc. 733, 168 Atl. 165, where the court sustained an ordinance vesting in the municipality's health officer and board of commissioners discretion to license live-poultry markets, it was stated: "Live poultry markets are not favorably regarded by the health officer of Union City because of the stench and vermin incident

434

thereto. * * * It seems that the board of commissioners may very well refuse to issue new permits for what they believe to be an unnecessary and an unsanitary business." In *King* v. *Davenport*, 98 Ill. 305, the court stated: "Unwholesome trades, slaughter-houses, operations offensive to the senses, * * * may all, says Chancellor Kent, be interdicted by law in the midst of dense masses of population, on the general and rational principle that every person ought so to use his property as not to injure his neighbor, and that private interests must be made subservient to the general interest of the community."

It is common knowledge that the retail live-poultry business, as suggested in the preamble of the ordinance, involves the shipment of live chickens and other fowl in crates into retail stores, and the killing, bleeding, disemboweling and eviscerating of such poultry, with its attendant stench, refuse, vast quantities of blood, waste matter from the live chickens, and noise. Moreover, the blood and entrails attract vermin and rats, and the refuse incidental to the plucking and cleaning, plus the empty filthy crates stored on the sidewalks, forms an ideal breeding place for such vermin and disease germs.

Inasmuch as these retail live-poultry stores are located in business districts (Municipal Code of Chicago, section 194A-10,) where people go for shopping and recreation, and are in close proximity to residential and apartment-house districts, the health hazards involved in the operations of this business affect great numbers of people in the conduct of their daily affairs.

In contrast, the operations of the retail dressed-poultry dealers, while located in the same areas, involve, at most, evisceration of the poultry, and the refuse incidental thereto. The operations of these retail dressed-poultry dealers do not involve the shipment of live chickens in crates, with the attendant waste matter from the live poultry, vermin and stench; nor do they involve the killing, plucking and

bleeding, with the extensive refuse and pools of blood, which attract rats and flies, nor the storing of dirty crates on the sidewalks. It is not merely the presence of a "few additional feathers" which distinguishes the classes, as suggested by plaintiff. In fact, it is difficult to perceive how the operations of the retail live-poultry dealers and the retail dressed-poultry dealers can be classed together with respect to the public-health hazards they create; hence, it is in no way arbitrary to differentiate between these two classes and to regulate only the retail live-poultry dealers whose operations have a far more dangerous effect on public health.

With reference to the classification between the wholesale and retail live-poultry dealers, it is apparent that while their operations are identical in many respects, nevertheless, they are conducted in different proximity to the public. The court may properly take judicial notice of the zoning ordinance whereby wholesale live-poultry dealers may operate only in a manufacturing district. (Municipal Code of Chicago, section 194A-12(2).) Under these circumstances, the noxious operations of the wholesalers are not conducted in an area which the public must traverse for its shopping or its recreation, or in close proximity to dwelling places, churches, hospitals, or other places where people congregate, as are the operations of the retail live-poultry dealers. Consequently, the dangers to the public health from the vermin, disease germs, rats, stench, and other nauseous elements incidental to the live-poultry business are not as great from the operations of the wholesale dealers as they are from the operations of the retail live-poultry dealers. Therefore, a legitimate basis for differentiation exists between these two classes, which warrants imposing the additional sanitation requirements upon only the retail live-poultry dealers.

On the basis of this analysis it is our judgment that the classification effected by the controverted ordinance is

neither arbitrary nor discriminatory, and, therefore, in no way constitutes a denial of due process or equal protection of the laws, or of other rights guaranteed by the State and Federal constitutions. The decree of the circuit court sustaining the constitutionality of these regulatory and licensing provisions, and dismissing plaintiffs' complaint to enjoin the enforcement of the ordinance, must therefore be affirmed.

Section 95-29.8 reads as follows: "Every licensee who purchases any live poultry or live fowl for resale or to be slaughtered for sale at retail, shall keep a record which will show the date of purchase, the number, weight, breed, description, and other distinguishing marks, if any, of said live poultry or live fowl and the name, address and brief description of the seller or sellers, type of conveyance used by said seller or sellers; and if said conveyance is a motor vehicle, a record of the license number thereof; which record shall be open to inspection by officers of the city at all times."

The chancellor held this section void. Appellants have not seen fit to defend this determination in their brief. There was no proof introduced on the hearing below indicating that the provisions of that section are in any way unreasonable. That section is designed for the purpose of aiding the municipal authorities to control the traffic in diseased and stolen poultry and fowl by being able to trace the source of supply. The presumption is in favor of the validity of an ordinance, and it will not bow to an attack because of unreasonableness unless the proof is clear and strong. (*Dorwart* v. *City of Jacksonville,* 333 Ill. 143, 148.) It was error for the trial court to strike down this provision. This action of the trial court is reversed. It is our conclusion that the ordinance is valid.

*Affirmed in part, and reversed in part.*