[Cite as *Stowers v. Ohio Dept. of Agriculture*, 2011-Ohio-2710.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

JACQUELINE STOWERS, et al.

     Appellants

     v.

OHIO DEPARTMENT OF
AGRICULTURE, et al.

     Appellees

C.A. No.     10CA009782

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     08CV159968

DECISION AND JOURNAL ENTRY

Dated: June 6, 2011

---

BELFANCE, Presiding Judge.

{¶1}  John Stowers, Jacqueline Stowers, and Manna Storehouse, LLC ("Manna"), appeal from the judgment of the Lorain County Court of Common Pleas granting summary judgment in favor of the Ohio Department of Agriculture ("ODA") and the Lorain County General Health District ("LCGHD"). For reasons stated herein, we affirm.

I.

{¶2}  John Stowers and Jacqueline Stowers are the sole owners of Manna, a limited liability company registered to do business in the state of Ohio. Manna is a family-run enterprise that sells food and other products to its members. John and Jacqueline Stowers, their seven children, and their daughter-in-law, Kathryn Stowers, perform work for Manna. These individuals all reside, together with four other children who are also family members, in a single home. Manna operates from the home, specifically from the western section of the home, where its operations occupy one main room and one overflow room (the "Manna rooms").

{¶3}    Manna has approximately one hundred members.  In order to become a member, one must pay a ten dollar initial fee, fill out an application, and complete an interview with Jacqueline Stowers.  Members may order products through Manna, either by mail, email, or phone.  The products are primarily food products, although Jacqueline Stowers testified that members may also order some cleaning or personal hygiene products.  The food products available to Manna members include raw chicken, turkey, beef, and eggs.  The meat is typically frozen.

{¶4}    After receiving orders from members, Manna obtains the ordered products from various suppliers.  Testimony from Jacqueline and Kathryn Stowers indicated that the primary supplier from which Manna obtains products is United Natural Foods, which delivers the products to Manna from Indiana.  When ordering from other suppliers, however, the Stowers will transport the products back to the Manna rooms themselves in their own unrefrigerated personal vehicles.  The products are stored in refrigerators in the Manna rooms, which contain refrigerators and shelving, until members take the products from Manna.

{¶5}    Manna has regular hours posted on the outside of the building and on its website, indicating when members may come to pick up their ordered products.  Members pay Manna when they pick up their products, although the pricing is determined at the time of the order. Manna's pricelist is posted on its website.

{¶6}    The Manna pricelist represents a mark up from the price at which Manna obtains products from suppliers.  The typical mark up is fifteen to twenty-five percent.  Beef is marked up by twenty cents per pound.  Manna pays sales tax on the amounts that it collects from members.  John and Jacqueline Stowers declare Manna's profits as income on their taxes.

{¶7} John and Jacqueline Stowers do not receive these profits as monetary payments. Rather, the profits essentially feed the family of fourteen. The Stowers family does not shop at grocery stores, but rather eats whatever is left of the food purchased through Manna after the members have picked up their ordered products. Although the Stowers are occasionally required to pay money to Manna in order to have enough food, they generally do not do this. Rather, the mark up enables them to purchase enough extra food from suppliers that they do not have to pay out of pocket for food.

{¶8} A search warrant was executed on the Manna rooms and the rest of the Stowers' home in December 2008. Manna's food products and other items were seized as part of an ODA and LCGHD investigation of Manna as an unlicensed retail food establishment. Chapter 3717 of the Ohio Revised Code authorizes regulation of retail food establishments and R.C. 3717.21 requires all retail food establishments to be licensed. Appellants did not have a retail food establishment license.

{¶9} Appellants then brought an action in the Lorain County Common Pleas Court seeking, inter alia, a declaration that R.C. 3717.21 and related provisions were unconstitutional as applied to Manna, a return of all seized property, an injunction against further enforcement of the licensing requirement against Manna, injunctions against further certain searches and seizures described in the complaint, and attorney fees.

{¶10} All other claims in this case have been voluntarily dismissed. The trial court entered a judgment ordering that property seized in the execution of the search warrant be returned to Appellants and later granted summary judgment to ODA and LCGHD on other claims. Appellants appealed and this Court issued an order remanding the case to the trial court for the limited purpose of disposing of the search and seizure claims, which the parties had

intended to voluntarily dismiss. Those claims have now been dismissed and Appellants appeal the trial court's order granting summary judgment against them on their remaining claims for declaratory judgment, injunction against enforcement, and attorney fees. Appellants present two assignments of error.

II.

ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANTS' ACTIVITIES REQUIRE LICENSURE AS A 'RETAIL FOOD ESTABLISHMENT.'"

{¶11} Appellants argue, in their first assignment of error, that Manna does not constitute a retail food establishment required to be licensed under R.C. 3717.21. We disagree.

{¶12} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 12.

{¶13} Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

To succeed on a summary judgment motion, the movant "bears the initial burden of *demonstrating* that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic). *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292. If the

movant satisfies this burden, the non-moving party " 'must set forth specific facts showing that there is a genuine issue for trial.' " Id. at 293, quoting Civ.R. 56(E).

{¶14} R.C. 3717.21 provides that, except for certain exclusions and exemptions not applicable in this case, "no person or government entity shall operate a retail food establishment without a license." A "[r]etail food establishment" is defined as "a premises or part of a premises where food is stored, processed, prepared, manufactured, or otherwise held or handled for retail sale." R.C. 3717.01(C). " 'Retail,' " furthermore, means "the sale of food to a person who is the ultimate consumer." R.C. 3717.01(C)(1). Appellants also emphasize that "[f]or purposes of Chapter 3717-1 [The State of Ohio Uniform Food Safety Code] of the Administrative Code, * * * "consumer" means a person *who is a member of the public*, takes possession of food, is not functioning in the capacity of an operator of a food service operation, retail food establishment or food processing plant, and does not offer the food for resale." (Emphasis added.) Ohio Adm. Code 3717-1-01(B)(21).

{¶15} Appellants argue that because they do not sell food to the public, Manna is not a retail food establishment and consequently not subject to the licensure requirement of R.C. 3717.21. Although the Court appropriately views the evidence in a light most favorable to Appellants, we disagree with the legal conclusions Appellants draw from that evidence. Appellants attempt to distinguish Manna's activities from "selling," but the evidence in this case indicates that Manna does sell food products. Members order their products before Manna purchases them, but Manna nonetheless gives those products to members in exchange for money. Furthermore, Manna makes a profit well in excess of the cost of transporting and storing the food.

{¶16} Although Appellants assert that their activities are different than traditional retailing, these differences are not relevant to the statute and do not distinguish their activities from selling. Manna does not purchase products if members have not ordered enough to make a bulk purchase. Members must place their orders before Manna will purchase products, but there is no exemption in the statute for an establishment that does not maintain a product inventory. Although not dispositive, it is also significant that Manna pays sales tax on the taxable products it orders for members. See, generally, R.C. 5739.01(B) (defining "sale" and "selling" for purposes of sales tax).

{¶17} When words are not defined in a statute, they shall be given their ordinary meaning and construed according to common usage. See R.C. 1.42; *Moore Personnel Servs., Inc. v. Zaino*, 98 Ohio St.3d 337, 2003-Ohio-1089, ¶15. In the common usage, a sale is the exchange of goods for tender. The statute does not require the state to investigate an establishment's method of obtaining and ordering products, collecting payment, or structuring profit in order to determine whether that establishment must be licensed. It is only necessary to determine that the establishment is selling food to consumers.

{¶18} Manna sets prices for its products in amounts sufficient to guarantee a profit and thereby generate income for the Stowers family. Manna members obtain food products from Manna in exchange for money and only money. Manna's business model does not alter the fact that these exchanges are sales.

{¶19} Appellants also assert Manna sells only to members, not the "public," and therefore does not sell to "[c]onsumer[s]," as defined in Ohio Adm. Code 3717-1-01(B)(21). This argument necessarily rests on the assumption that "consumer" has the same definition for purposes of R.C. 3717.01 and R.C. 3717.21 as it does for the purposes of Ohio Adm. Code 3717-

1. Appellants have not made any argument or provided any legal authority in support of this assumption.

{¶20} Chapter 3717 of the Ohio Administrative Code, the Uniform Food Safety Code, is promulgated pursuant to authorization granted in R.C. 3717.05. That provision does not authorize the drafters of the Uniform Food Safety Code to define statutory terms contained in R.C. Chapter 3717 of the Ohio Revised Code. R.C. 3717.05. Although the word consumer has been defined for purposes of the Ohio Administrative Code, that definition is not applicable to R.C. Chapter 3717. We therefore conclude that "consumer" is not statutorily defined for purposes of R.C. 3717.01. Because it is not defined, we construe "consumer" according to its ordinary meaning. See R.C. 1.42; *Moore Personnel Servs. Inc.*, supra.

{¶21} The ordinary meaning of the word "consumer" is "one that consumes" or "one that utilizes economic goods[.]" Merriam-Webster's Collegiate Dictionary (11 Ed. 2005) 268. In this sense, the "ultimate consumer[,]" as described in the statute, is most reasonably understood as the end user of a consumable good, in this case, food. Whether such an individual is a member of the "public," however defined, is irrelevant because to be a consumer, a person need only consume a product.

{¶22} Appellants have not contested the fact that when members order food through Manna, it is consumed primarily by those members and their families. Appellants have made no suggestion that Manna members are not typically the end users of the products, including food, that they purchase from Manna. They are therefore "consumers," within the ordinary meaning and common usage of that word. Viewing the evidence in the light most favorable to the Appellants, we must still conclude that Manna is a premises or part of a premises where food is stored, processed, prepared, manufactured, or otherwise held or handled for sale to a person who

is the ultimate consumer. Manna is therefore a retail food establishment subject to the licensing requirement of R.C. 3717.21

{¶23} We therefore conclude that the trial court did not err in finding that the statute requires Manna to be licensed as a retail food establishment and in granting summary judgment to Appellees on their declaratory judgment claim. Appellants' first assignment of error is overruled.

ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN FINDING THAT R.C. 3717 IS CONSTITUTIONAL AS APPLIED TO APPELLANTS."

{¶24} In their second assignment of error, Appellants argue that R.C. 3717 is unconstitutional as applied to them because its application violates their due process and equal protection rights as guaranteed by the Ohio Constitution. We disagree.

{¶25} The due process and equal protection rights guaranteed by the Ohio Constitution have been recognized as functionally equivalent to the equal protection and due process rights protected by the United States Constitution. *Austintown Twp. Bd. of Trustees v. Tracy* (1996), 76 Ohio St.3d 353, 359, citing *State ex rel. Schwartz v. Ferris* (1895), 53 Ohio St. 314, 336 (equal protection); *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶48 (due process).

Due Process

{¶26} Appellants first argue that R.C. 3717, as applied, violates their due process rights. "When reviewing a statute on due-process grounds, we apply a rational-basis test unless the statute restricts the exercise of fundamental rights." *Arbino* at ¶49. A statute will be found valid under rational basis test "[1] if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and [2] if it is not unreasonable or arbitrary." (Internal

quotations and citations omitted.) Id. Generally, courts reviewing a legislative exercise of the police power in furtherance of public health or other important interests will defer to the legislature's judgment. See, e.g., 16 Ohio Jur. 3d Constitutional Law §128.

{¶27} Appellants allege that the regulatory scheme unconstitutionally infringes upon property rights, their right to earn a livelihood, their freedom to contract, and their inherent, natural right to cooperate with friends and neighbors to acquire food as guaranteed by Section 1 of Article I of the Ohio Constitution. This section states:

> "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety." Section 1, Article I, Ohio Constitution

{¶28} We initially observe that the evidence in this case does not support Appellants' contention that the application of Ohio's food safety laws to Manna infringes on Appellants' right to cooperate with friends and neighbors. We do not doubt Appellants' sincere commitment to assisting friends and neighbors in obtaining the type of food that Manna offers, or their genuine belief that the services they provide are beneficial to Manna's members and their community. These laudable motives, however, do not transform a for-profit business into a cooperative community endeavor. Members do not do work for Manna or otherwise contribute to this for-profit enterprise other than by purchasing its products. Manna is clearly a business for-profit and the Appellants did not put forth any evidence that the licensing statute infringes on their right to cooperate with others within their community.

{¶29} Although we reject Appellants' contention that their right to cooperate with friends and neighbors is infringed by enforcement of the statute, we will assume, arguendo, that Appellants' property rights and happiness are limited by the licensing requirement. See *Benjamin v. City of Columbus* (1957), 167 Ohio St. 103, 110 ("Almost every exercise of the

police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, within the meaning of Section 1 of Article I of the Ohio Constitution[.]"). We note that Appellants have not suggested that the statute infringes upon the exercise of any fundamental rights and hence they do not suggest that anything other than rational basis review applies. See *Nebbia v. New York* (1934), 291 U.S. 502, 527-528 ("The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases."). Under rational basis review, the statute is "valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary." *Benjamin*, 167 Ohio St. at 110.

{¶30} Appellants do not contest that food safety is substantially related to the public health and safety. Rather, they argue that the food safety regulations that would require Manna to obtain a license are unreasonable or arbitrary. "Whether an exercise of the police power * * * is unreasonable or arbitrary [is] * * * committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them." *Benjamin*, 167 Ohio St. at paragraph six of the syllabus.

{¶31} This "clearly erroneous" standard of rational basis review is highly deferential. This Court need not agree with the legislature's conclusions in order to determine that they are rational and not clearly erroneous. A proffered explanation for the statute need not be supported by evidence; rather, we will be satisfied with the government's "rational speculation" linking the regulation to a legitimate purpose, even "unsupported by evidence or empirical data." *Fed. Communications Comm. v. Beach Communications, Inc.* (1993), 508 U.S. 307, 313. "This standard of review is a paradigm of judicial restraint. The Constitution presumes that, absent

some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." Id. at 314. So long as some rational basis can be articulated to support the legislation, moreover, it is "constitutionally irrelevant [what] reasoning in fact underlay the legislative decision." (Internal quotations and citation omitted.) *United State R.R. Bd. v. Fritz* (1980)*,* 449 U.S. 166, 179 (1980).

{¶32} Regulation of Manna as a retail food establishment does have some rational relationship to public health and safety. Appellants transport and store a variety of foods. Some of these foods are unpackaged. Some are processed in Appellants' home and apparently stored with their personal food items, including the family's leftovers. Some of the items that Manna sells, such as raw meat and eggs, can easily carry foodborne illness. Some of the foodborne illnesses that could be carried on these food items, moreover, can be communicated from a person who eats that food to a person who did not eat the food and thereby travel among the general population.

{¶33} Appellants repeatedly cite the fact that there have been no reported incidents of foodborne illness contracted from Manna food. This assumes, first, that any incidence of illness from consumption of Manna's food would have been recognized and reported. Second, the legislature may have reasonably intended to prevent such illnesses before a reported incident occurs. The absence of a documented illness is therefore irrelevant because Appellants have not provided evidence indicating that illness could not be carried by the food that Manna supplies. Because Appellants' products can carry illness that could be transmitted to Manna's members, and even eventually to the general public, it would not be "clearly erroneous" for the legislature

to conclude that regulation of this activity would further the public health. See *Benjamin*, 167 Ohio St. at paragraph six of the syllabs.

{¶34} Appellants also argue that because they sell food only to members, they should not be subject to food safety laws designed to protect the general public. Appellants emphasize that members may enter and inspect the Manna rooms in Appellants' home. Members, however, need not demonstrate any knowledge about food safety in order to join. Appellants were not able to cite any characteristic distinguishing members from the general public other than Jacqueline Stowers' belief in their honesty and trustworthiness. The legislature did not act arbitrarily or capriciously in declining to find this particular characteristic relevant to the licensing requirement. The legislature may have also rationally concluded that Manna members' right to inspect the Manna rooms is wholly disconnected from their inclination, ability, and qualification to do so with the thoroughness required to prevent the transmission of foodborne illness to members, their families, and the general public. Indeed, by the logic of Appellants' arguments, any store could avoid the licensing requirement if it was to simply allow its customers to inspect the store.

{¶35} Appellants also contest certain aspects of the food safety laws and licensure requirements. For example, Ohio Adm. Code 3717-1-02.4(B) requires that a license holder be able to demonstrate certain food safety knowledge during an inspection. Much of this knowledge is relevant to activities, such as preparing and serving hot food, that Appellants undisputedly do not do.

{¶36} Nonetheless, Appellants' argument is irrelevant to the declaratory judgment action presently before this Court, as Appellants have not suffered an injury as a result of these particular requirements. In the case sub judice, Appellants are contesting the requirement that

they *obtain* a license. Appellants do not have a license at this time and they have not had a license revoked for failure to demonstrate certain knowledge. The mere possibility that Appellants might, in the future, have their currently non-existent license revoked for failure to demonstrate knowledge that may or may not, at the time of revocation, be relevant to their activities, is insufficient to maintain their current action. This action seeks to prohibit the application of Ohio's food safety laws to Manna and exempt them from the license requirement altogether.

{¶37} We note that the knowledge listed in the regulations is relevant to the broad group of activities in which one is permitted to engage after obtaining a retail food establishment license and therefore the regulations are not facially invalid. As they have not yet been applied to Appellants, we cannot determine that they are unconstitutional as applied to them.

{¶38} Appellants have not shown any due process violation. The legislature could have reasonably found that food safety bears a substantial relationship to the public health and furthermore that regulation of Manna and similar types of operations would improve food safety and, consequently, the public health. As neither of these conclusions is arbitrary or irrational, Appellants' due process rights have not been unconstitutionally infringed.

Equal Protection

{¶39} Appellants next argue that, as applied, R.C. 3717.21 violates their equal protection rights as guaranteed by the Ohio Constitution. Because the statutory classification at issue involves neither a suspect class nor a fundamental right, we again apply the rational basis test to determine if the classification has some reasonable basis. See, e.g., *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, ¶8, quoting *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29 ("A statutory classification which involves neither a suspect class nor a

fundamental right does not violate the Equal Protection Clause of the Ohio or United States Constitutions [sic] if it bears rational relationship to a legitimate governmental interest.")

{¶40} Because the legislature's findings are presumed to be reasonable, Appellants have the burden of demonstrating that there is no rational basis for subjecting Manna to the licensing requirement. Appellants argue that to subject Manna to the requirement treats them like a large grocery store or a restaurant. Appellants' argument is misplaced in that it misconstrues the reach of the statute. We do not find any language in the statute suggesting that it is meant to apply exclusively to larger enterprises and restaurants. Manna does not indicate that the statute is inapplicable to smaller grocers and retailers that sell food. Manna also did not present any evidence indicating that officials enforcing the licensing requirement on behalf of the ODA or LGCHD had not enforced the license requirement with respect to smaller establishments.

{¶41} Appellants cite three cases in support of their contention that Manna may not reasonably be classified as a retail food establishment. See *Craigmiles v. Giles* (C.A.6 2002), 312 F.3d 220, 222 (finding requirement of funeral director license in order to sell funeral merchandise violated equal protection); *Cornwell v. Hamilton* (S.D.Cal. 1999), 80 F.Supp.2d 1101, 1103, 1118-1119 (finding that requiring African hair braiders to obtain cosmetology licenses violated equal protection); *Merrifield v. Lockyer* (C.A.9 2008), 547 F.3d 978, 989-992 (finding that exemptions for nonpesticide pest controllers of certain vertebrates, but not others, violated equal protection even though broad licensing scheme was otherwise constitutional). The primary inquiry here, as in the cases Appellants cite, is into the overlap between the challenger's activities and the conduct the legislature deemed in need of regulation. Where a challenger's activity presents no risk of the hazards sought to be avoided by regulation, it is irrational to subject that challenger to regulation. See *Craigmiles*, 312 F.3d at 226; see, also,

*Charles v. City of Chicago* (1952), 413 Ill. 428, 434-436 (finding that legislative distinction between live-poultry and dressed-poultry retailers was not irrational or arbitrary and therefore did not violate due process or equal protection).

{¶42} Here, Appellants' primary activity is the transportation, storage, and sale of food. Appellants incidentally engage in other activities, such as processing raw meat. The fact that Appellants' incidental activities are correlated with a higher risk of foodborne illness than their primary activities does not negate the fact that Appellants' primary activities may result in the transmission of foodborne illness. The parties have not disputed that preventing the spread of foodborne illness is a primary purpose of Ohio's food safety laws and regulations. In this case, unlike *Craigmiles* and *Cornwell*, the challenged statute and regulation are intended to mitigate risks posed by conduct in which the challenger engages. The General Assembly did not, then, act irrationally in including entities like Manna in the scope of the regulation.

{¶43} Appellants also cite *Merrifield* to support their contention that the exemptions from Ohio's licensing scheme are irrational even if the overall licensing requirement is not. *Merrifield* does not, however, support Appellants' position. The *Merrifield* court specifically held that a single licensing scheme could rationally be applied to a broad range of activities. Id. at 988, quoting *Williamson v. Lee Optical* (1955), 348 U.S. 483, 488 ("The licensing statute does not fail because it is not tailored to each precise specialization within a field. 'It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.' "). The licensing scheme in *Merrifield* was only unconstitutional in that it irrationally exempted one group, but not another, when the two groups were, in fact, similarly situated. Id. at 991. In *Merrifield*, as in *Craigmiles*, the court also found

indications in the legislative history that the statute was motivated by an economic animus. Id. at 991-992.

{¶44} Appellants argue that the exemptions from the licensing requirement are as irrational as the *Merrifield* exemption for certain pest controllers. The retail food establishment licensing exemptions include, inter alia, persons who sell eggs directly from a farm where they maintain five hundred or fewer birds, persons who maintain fewer than one thousand birds and sell chicken meat from the place where it is processed or at a farm auction, and a variety of instances in which people may sell foods that are not potentially hazardous, including unprocessed fruits and vegetables, cottage food products, honey, cider, etc. R.C. 3717.22(B). Foods that require refrigeration are among foods that are defined as potentially hazardous. R.C. 3715.01(A)(19)(c). Notably, the only exemptions available for the sale of potentially hazardous foods, like eggs and meat, apply only to sellers who produce the eggs or meat in their own small farming operations. See R.C. 3717.22(B).

{¶45} Appellants are not situated similarly to any of the exempted groups. Appellants purchase most of their food products from a wholesale company in Indiana. Appellants have not suggested that they contribute substantially to cottage food production of non-potentially hazardous foods or to small scale Ohio farming, both of which it appears the legislature sought to protect with the exemptions. Appellants have not introduced evidence suggesting that they sell any food that they produce themselves. Jacqueline Stowers, in fact, stated in her deposition that when the family had raised its own livestock, it had kept that meat for family consumption rather than selling it through Manna. The statute's exemptions are not unconstitutional as applied to Appellants because Appellants are not situated similarly to groups that are exempted.

**{¶46}** The exempted groups are marked by at least one of two distinctive characteristics, neither of which applies to Appellants. The exempted groups are either selling exclusively non-potentially hazardous foods in small quantities or they are small producers selling directly to consumers. It is not required that the legislature demonstrate that all exemptions are necessary, so long as an exemption does not draw a distinction that cannot rationally suffice as a basis for different treatment. The legislature may, however, choose to protect small farming and cottage food operations and to treat those operations differently than Manna.

> "[Equal protection requires] only that the classification challenged be rationally related to a legitimate state interest. * * * [R]ational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step, in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations[;] * * * in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with [Equal Protection]." (Internal citations and quotations omitted.) *City of New Orleans v. Dukes* (1976)*,* 427 U.S. 297, 303-304.

**{¶47}** The legislature could have reasonably determined that it would further public health and safety to subject Manna to the licensing requirement for retail food establishments. We do not find that conclusion clearly erroneous. The legislature could have also determined that the burden of obtaining a license should not be imposed on small farm or cottage food production operations. Because the distinction between Manna and these exempted operations is not wholly arbitrary or irrational, those exemptions also do not violate the requirements of equal protection. For these reasons, Appellants' second assignment of error is overruled.

III.

**{¶48}** Appellants' first assignment of error is overruled because Appellants operate a food retail establishment subject to Ohio's food safety laws, including R.C. 3717.21.

Appellants' second assignment of error is overruled because Ohio's food safety laws are not unconstitutional as applied to Appellants. Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR

APPEARANCES:

MAURICE A. THOMPSON, Attorney at Law, for Appellants.

ABRAHAM CANTOR, Attorney at Law, for Appellee.

SCOTT F. SERAZIN, Assistant County Prosecutor, for Appellee.

MICHAEL DEWINE, Ohio Attorney General, and JAMES R. PATTERSON, Assistant Attorney General, for Appellee.