[Cite as *Adair v. Norton*, 2015-Ohio-3444.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
| --- | --- | --- |
| TIM AND CONNIE ADAIR, et al. | | C.A. No.      27474 |
| Appellants | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| THE CITY OF NORTON | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No.      CV 2013-02-1134 |

DECISION AND JOURNAL ENTRY

Dated: August 26, 2015

MOORE, Judge.

{¶1}    Plaintiffs, Tim and Connie Adair and Paul Ritzman, (collectively "the Homeowners"), appeal from the judgment of the Summit County Court of Common Pleas. This Court reverses and remands this matter for further proceedings consistent with this decision.

I.

{¶2}    The Homeowners reside in an area that the parties have labeled as "the Spring Avenue Outfall," which is located in the City of Norton ("Norton"). Norton does not have a treatment facility for wastewater. In 1997, Norton entered into an agreement with the City of Barberton ("Barberton") to provide sanitary sewage treatment services to certain Norton residents at the Barberton Wastewater Treatment Plant ("the Barberton plant"). In the Spring Avenue Outfall, the sewer lines are owned by Summit County, and these lines connect with sewers owned by Barberton. The sewage from the Spring Avenue Outfall is transported to, and treated at, the Barberton plant.

**{¶3}** In 2003, Norton passed an ordinance establishing a sewer "surcharge[.]"[1] Norton Codified Ordinances ("Loc.Ord.") 1042.06. Thereafter, Barberton began to collect the surcharge from all Norton residents whose sewage is treated by the Barberton plant, including the residents in the Spring Avenue Outfall.

**{¶4}** In 2013, the Homeowners filed a complaint in which they sought declaratory and injunctive relief together with the return of the sewer surcharges. The Homeowners' claims included constitutional challenges to the surcharge, and they alleged that imposing the surcharge on them violated Loc.Ord. 1042.06. Thereafter, the parties filed competing motions for summary judgment, and the trial court granted Norton's motion.

**{¶5}** The Homeowners timely appealed, and they now raise one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF [] NORTON FINDING THAT THE [] NORTON SANITARY SEWER SURCHARGE DOES NOT VIOLATE [LOC.ORD.] 1042.06 AND BY HOLDING THAT [] NORTON MAY ASSESS A SURCHARGE TO THOSE USERS OF SANITARY SEWER SYSTEMS THAT ARE NEITHER OWNED BY NOR OPERATED BY [] NORTON.

**{¶6}** In their sole assignment of error, the Homeowners argue that the trial court erred in granting summary judgment in favor of Norton.

**{¶7}** We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts

---

[1] In 2004, the ordinance was amended to clarify that the sewer surcharge was 27.5% times the current user rate that Barberton charged Barberton residents. *See* Loc.Ord. 1042.06

of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper only if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9} Here, the parties' disagreement does not presently concern any disputed facts, but, instead, it is focused on the trial court's interpretation of a local ordinance and the application of the statute of limitations. *See Meeker v. Akron Health Dept.*, 9th Dist. Summit No. 24539, 2009-Ohio-3560, ¶ 11 ("This Court applies a de novo standard of review to an appeal from a trial court's interpretation and application of an ordinance."). Because the Homeowners specifically confine their argument to challenge the trial court's resolution of their claim that the surcharge violated the Loc.Ord. 1042.06, we will confine our analysis accordingly. As a result, the trial court's ruling as to the constitutional claims is not before us in this appeal. We will address separately the following issues pertaining to the claim at issue in this appeal: the trial court's interpretation of Loc.Ord. 1042.06, the trial court's determination that the Homeowners failed to show a valid cause of action against Norton on this claim, and the statute of limitations relative to this claim.

Interpretation of Loc.Ord. 1042.06

{¶10} Loc.Ord. 1042.06 provides:

1042.06    SURCHARGES FOR CONNECTION TO SANITARY SEWER SYSTEM.

Council hereby establishes the following regulations and surcharges *for users connected to* [*Norton*]*'s sanitary sewer system*:[2]

(a) No person, corporation, public agency, partnership or association whatsoever shall remain connected or continue to use, either directly or indirectly, [Norton]'s water system without paying the applicable sanitary sewer surcharges established in this section and any applicable additional charges determined in accordance with the provisions of this section or otherwise.

(b) [*Norton*] *shall charge customers connected to sanitary sewers that ultimately discharge to the Barberton sanitary sewer system a surcharge of 27.5% times the current user rate Barberton charges Barberton residents.*

(c) No later than the end of 2007 and at least every five years thereafter, and at any other time that Council finds appropriate the surcharges shall be recalculated based on the flow billed by Barberton and Summit County and the replacement cost of the sanitary sewer system that ultimately discharges to the Barberton sanitary sewer system at that time.

(d) For so long as the agreement between [Norton] and Barberton remains in effect, Barberton shall charge and collect the surcharge described in this section in conjunction with its surcharges and remit those surcharges to [Norton] as provided in the agreement. All monies collected by [Norton] as charges from Barberton shall be deposited into the Sanitary Sewer Utility Fund for [Norton].

(e) The imposition of surcharges provided for in this section shall not preclude the levy of special assessments and/or charges against benefited properties, now in place or imposed in the future, to provide funds and/or reimburse [Norton] for its cost to construct, replace, rehabilitate or otherwise improve sanitary sewers required to provide sanitary sewer service to such properties, and the charges provided for in this section are in addition to any other permits and charges required by law.

(f) In the event that any lot or land or building or other structure thereon is connected directly or indirectly to the sanitary sewer system in violation of any of the provisions of this section, and the owner, agent, lessee, tenant or occupant of such lot or land fails or refuses to disconnect the same upon being directed to do so by [Norton], the City [of Norton] Engineer is hereby authorized to cause such lot or land to be disconnected from the sanitary sewer system, and the violator shall be liable to [Norton] for the cost of making such disconnection.

(Emphasis added.)

---

[2] We note that in the copies of the ordinances submitted by the parties, this sentence ends with a period; however, in the codified version, as reproduced online, this sentence ends with a colon.

**{¶11}** Based upon the wording of the ordinance, the Homeowners claimed that the ordinance applies only to Norton residents whose homes connect to sewer lines that *are owned* by Norton. Because the sewer lines in the Spring Avenue Outfall are owned by Summit County, the Homeowners maintain that Loc.Ord. 1042.06 does not allow Norton to impose on them a surcharge. In its motion for summary judgment, Norton maintained that the ordinance permitted surcharges for all Norton residents whose sewage ultimately discharges into the Barberton plant and that the trial court should defer to its interpretation of the statute pursuant to *Mayfield Heights v. Cardarelli*, 63 Ohio App.3d 812, 817 (8th Dist.1989). On this issue, the trial court concluded:

> "Courts are reluctant to interfere with the interpretations of a local ordinance and are inclined to defer to the judgment of the municipal body so long as the ordinance bears a substantial relation to public health, morals, safety or welfare and is not unreasonable or arbitrary." []*Cardarelli*, [at] 817[]. "In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished." []*Parma v. Nambeck*, 8[th] Dist. Cuyahoga No. 96533, 2012-Ohio-171, citing *State v. S.R.*, 63 Ohio St.3d 590, 594-595 [] (1992).
>
> The court has already determined that the ordinances themselves are constitutional. *As to their application, it is obvious that the city of Norton intended that all residents who have sewer services that ultimately discharges waste water into the Barberton [Plant] be included in the surcharge.* The court finds no basis by which it could determine that the application of the ordinances is illegal or unconstitutional. The plaintiffs have failed to show that there is a valid cause of action.

(Emphasis added.)

**{¶12}** Therefore, it appears that the trial court deferred to Norton's interpretation of the ordinance based upon the quoted language from *Cardarelli*. We conclude that the trial court erred in this respect.

**{¶13}** Although the language in *Cardarelli* may be read to lend support for Norton's position that the court should defer to Norton's interpretation of the ordinance, this Court has

held that an ordinance cannot be "interpreted" unless it is ambiguous. *See Padrutt v. Peninsula*, 9th Dist. Summit No. 24272, 2009-Ohio-843, ¶ 20. "When the language of the ordinance is unambiguous, the courts apply the plain and ordinary meaning of the words." *Porter v. Green Bd. of Zoning Appeals*, 9th Dist. Summit No. 23379, 2007-Ohio-510, ¶ 12, citing *Roxane Laboratories, Inc. v. Tracy,* 75 Ohio St.3d 125, 127 (1996). "Unambiguous language does not require court interpretation or application of the rules of statutory construction." *Porter* at ¶ 12, citing *4522 Kenny Rd., L.L.C. v. Columbus Bd. of Zoning Adjustment*, 152 Ohio App.3d 526, 2003-Ohio-1891, ¶ 13 (10th Dist.). "Instead, the 'court must only read and follow the words of the ordinance.'" *Porter* at ¶ 12, quoting *4522 Kenny Rd., L.L.C.* at ¶ 13. "On the other hand, an ambiguous ordinance contains language that is susceptible to more than one reasonable interpretation, thus necessitating court interpretation." *Porter* at ¶ 12, citing *Family Medicine Found., Inc. v. Bright*, 96 Ohio St.3d 183, 2002-Ohio-4034, ¶ 8.

{¶14} Here, the trial court made no finding as to whether the language of the ordinance was ambiguous before accepting the City's interpretation. Therefore, we sustain the Homeowners' assignment of error on the basis that the trial court erred in failing to determine that the ordinance was ambiguous before interpreting the language. We make no judgment as to whether the ordinance is ambiguous, and instead we remand this matter for the trial court to consider in the first instance. *See Mourton v. Finn*, 9th Dist. Summit No. 26100, 2012-Ohio-3341, ¶ 9 (declining to resolve legal issues in the first instance so to retain role as a "reviewing court"); *see also Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 1992-Ohio-95 ("If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court."). In doing so, we do not reach any issues concerning the interpretation of the agreement between Norton and Barberton.

{¶15} We further note that, although the *Cardarelli* Court stated that courts are "reluctant" to interfere with an "interpretation[,]" (presumably of the city), it determined that the ordinance in that case was clear and direct. *Id.* at 817. Further, the remainder of the sentence quoted from *Cardarelli* pertains to deference to "*the judgment* of the municipal body so long as the ordinance bears a substantial relation to public health, morals, safety or welfare and is not unreasonable or arbitrary," and this language typically pertains to *a constitutional review* of an ordinance, *not an interpretation* of the ordinance. (Emphasis added.) *Id.* at 817. *See id.* at 815-16. *See Senz v. Mills*, 9th Dist. Wayne No. 95CA0020, 1996 WL 73378, *2 (Feb. 21, 1996) (using similar language in reviewing a due process challenge to a legislative enactment); *In re Complaint of Reynoldsburg*, 134 Ohio St.3d 29, 2012-Ohio-5270, ¶ 29 (the words "public health, safety and welfare" are "commonly associated with an exercise of the police power"). *See also Stowers v. Ohio Dept. of Agriculture*, 9th Dist. Lorain No. 10CA009782, 2011-Ohio-2710, ¶ 26. Accordingly, if, on remand, the trial court finds the ordinance to be ambiguous, the court is directed to address the applicability of the *Cardarelli* holding on which Norton has relied as part of its analysis in interpreting the ordinance.

Cause of Action

{¶16} Next, in its journal entry, after adopting Norton's interpretation of the ordinance, the trial court further concluded, "The plaintiffs have failed to show that there is a valid cause of action."

{¶17} Based upon the context and arguments advanced by the parties below, we are unable to discern the meaning of this ruling. In a footnote in its motion for summary judgment, Norton maintained that the Homeowners failed to state a valid cause of action in regard to their claim that the sewer surcharge violated Loc.Ord. 1042.06. Norton based this argument on its

premise that, generally, a city cannot be held liable for its failure to conform to its own ordinances. The Homeowners responded to this argument in their memorandum in opposition to summary judgment, in which they maintained that municipalities may be sued, and the law cited by Norton was distinguishable, and Norton replied on this issue.

{¶18} However, the trial court's determination that the Homeowners "failed to show that there is a valid cause of action," follows the trial court's discussion pertaining to the interpretation of the ordinance, and it is at the end of a paragraph that pertains to the intent of Norton in creating the sewer surcharge. There is no discussion in the journal entry pertaining to whether a cause of action exists against a city for violating its own ordinances. As a result, we cannot discern whether the trial court intended to (1) indicate that the Homeowners could not succeed on their claim against the city because of the court's interpretation of the statute, or (2) whether it held that, based upon the argument advanced by Norton pertaining to cities not incurring liability for failing to follow their ordinances, there existed no cause of action. Accordingly, we make no judgment on this issue. Instead, on remand, the trial court is instructed to clarify the basis for its determination in this regard. *See RFFG, L.L.C. v. Extinct Temps*, Inc., 9th Dist. Summit No. 26998, 2015-Ohio-1805, ¶ 23 (remanding for trial court to provide clarification and explanation of its ruling in order to provide a meaningful appellate review).

Statute of Limitations

{¶19} In its motion for summary judgment, Norton further maintained that the statute of limitations barred the Homeowners' claims. The Homeowners responded that the statute of limitations had not commenced to run until 2012, or, alternatively, that the continuing violation rule tolled the statute of limitations.

**{¶20}** In its journal entry, the trial court concluded that "[b]ecause [it] ha[d] determined that there was no wrongful conduct and no actions taken on the part of [] Norton comprised any constitutional violations, the Continuing Violations Doctrine cannot apply to toll the time for filing this action." Thus, the trial court's analysis of the statute of limitations was dependent on its interpretation of the ordinance. Therefore, because we are remanding this matter on the issue of construction/interpretation of the ordinance, we conclude that our review of the statute of limitations issue is premature, and we decline to address it.

III.

**{¶21}** The Homeowners' sole assignment of error is sustained. The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this decision.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CARLA MOORE
FOR THE COURT


CARR, P. J.
CONCURS.

CANNON, J.
DISSENTING.

**{¶22}** I respectfully dissent from the opinion of the majority.

**{¶23}** I agree with the vast majority of the opinion. I do, however, believe this Court should resolve the parties' last issue: whether the ordinance and/or the agreement between Norton and Barberton is clear or whether either is ambiguous with regard to a particular phrase. Because the parties have identified the issues and argued them on appeal and, in taking into consideration our standard of review on appeal, this Court should resolve the issue instead of remanding the matter to the trial court.

**{¶24}** We review a trial court's grant of summary judgment de novo. The trial court decided the case in favor of the City of Norton with regard to a variety of constitutional challenges, and a claim that the City had violated its own ordinance. There has been no appeal with regard to the denial of the constitutional claims.

**{¶25}** Sanitary sewer service in the City of Norton is accomplished by a unique blend of providers. Sewage is collected by three different entities: Barberton, Norton, and Summit County. Part of the sewage collected by Summit County is treated at private package plants operated by the county. Other sewage collected by Summit County is sent to the Barberton

Wastewater Treatment Plant ("Barberton WWTP"). In spite of the fact that the sewage from these latter customers is collected by Summit County, the sewage is sent to Barberton, and the customers receive their sewer bills from Barberton.

{¶26} As a result, over the years, it has evolved that sewage for Norton residents is ultimately treated by two entities, to wit: Barberton and Summit County. There are five service areas that send sewage to be treated at the Barberton WWTP. In some of these areas, the sewage sent to Barberton WWTP is collected by Norton. In other areas, the sewage sent to the Barberton WWTP is collected by Summit County. One such area is the Spring Avenue Outfall, which is the service area where Appellants reside.

{¶27} In addition to these areas, there are four distinct service areas served by local package plants. These plants are operated and maintained by Summit County.

{¶28} Appellants' assignment of error claims that the trial court erred by granting summary judgment by finding "the City of Norton sanitary sewer surcharge does not violate Codified Section 1042.06 and by holding that the City of Norton may assess a surcharge to those users of sanitary sewer systems that are neither owned by nor operated by the City of Norton."

{¶29} The ordinance in question, as well as other relevant ordinances cited by Appellants, are tied directly to an agreement between the City of Barberton and Norton. Section 1042.06(d) provides for a surcharge to certain Norton residents for "so long as the agreement between the City and Barberton remains in effect * * *."

{¶30} It seems clear the ordinance itself is applicable to Appellants. Section 1042.06(b) of the Norton Codified Ordinances states the city "shall charge customers connected to sanitary sewers that ultimately discharge to the Barberton sanitary sewer system a surcharge * * *." It is undisputed that the sewage from Appellants' area, the Spring Avenue Outfall, ultimately

discharges into the Barberton WWTP. I don't believe there is any ambiguity with the ordinance in this regard. However, Appellants argue the agreement between Norton and Barberton does not authorize the imposition of the surcharge in the area where sewage is collected by Summit County.

{¶31} For purposes of this case, the most significant phrase at issue is found in the 1997 agreement between Barberton and Norton. That phrase indicates that the "service area" for purposes of the agreement is "the corporate limits of Norton * * * exclusive of areas which receive sanitary service from the County of Summit."

{¶32} The question is, in this agreement, what is meant to be included in the above exclusion: 1) areas where sewage is collected by Summit County *and* the package plants Summit County operates and maintains or 2) *only* the areas that are served by the package plants? It is undisputed that the parties to the agreement, Barberton and Norton, have treated the phrase to mean the latter. That is, a surcharge has been billed by Barberton and collected for all of the areas where Summit County collected sewage and sent it to the Barberton WWTP. Appellant contends this phrase is unambiguous, is not subject to interpretation, and does not permit the surcharge for residents who have their sewage collected by the county.

{¶33} I agree with the majority that the trial court did not specifically make a "finding" that the phrase was ambiguous and therefore in need of interpretation. The trial court's use of the term "interpretation[]" suggests that it acknowledges the ambiguity and the need for interpretation, but there is no specific finding in that regard. We are, however, in a position to review this case de novo, regardless of what the trial court did or did not specifically state. If the case is remanded and appealed again, it will not matter what the trial court determines, because we are not bound to give deference to that finding anyway.

{¶34} Because the parties have identified the issue and argued it on appeal, I believe this Court should resolve the issue. This is not a situation, as found in R.C. 2505.22, where the appellee needed to file a cross-assignment of error in order to defend the judgment of the trial court for a reason other than the analysis given by the trial court. Appellants have not argued that the trial court was required to make a finding of ambiguity before it could make its decision. Appellants' contention is that the phrase is not ambiguous, and, thus, we should apply the plain meaning of the words. We are in a position where we should decide that point.

{¶35} As noted, this is not a case where we would give deference to trial court "findings" in making our determination, and, therefore, I respectfully believe we are in a position to decide the case based on what is before this Court instead of remanding the case to the trial court. A remand of this case will, almost certainly, result in a subsequent appeal. At that point, although we may have the benefit of additional analysis by the trial court, we are not bound to defer to it in any way.

{¶36} With regard to the merits of the appeal, I think the agreement in question is subject to more than one interpretation. I believe the facts are clear that there are two types of sewer service provided in the Norton corporate limits by Summit County: (1) where the county collects the sewage and sends it to Barberton and (2) where the county collects and treats the sewage in private package plants operated and maintained by the county. Applying the "exclusive of areas which receive sanitary service from the County of Summit[]" phrase in section 28 of the agreement only to the service of the county that collects *and* treats the sewage is both sensible and logical.

{¶37} The interpretation given by Norton (and apparently Barberton, the only other party to the agreement) is the only logical one to accept. Both parties to the agreement have

been actively engaged in conduct that is consistent with this interpretation. On appeal, without any of the constitutional challenges to consider, I believe there are no genuine issues of material fact, and Norton is entitled to judgment in its favor as a matter of law.

{¶38} Likewise, with regard to the trial court's determination that the Plaintiffs "have failed to show there is a valid cause of action[,]" I do not believe it matters if the trial court made that determination based on the court's interpretation of the ordinance or agreement, or Norton's position that it cannot be liable for a violation of its own ordinances. I think we are in a position to make that determination based on the arguments and briefs of the parties. Based on the only logical interpretation of the agreement, I do not believe any cause of action has been established.

(Cannon, J., of the Eleventh District Court of Appeals, sitting by assignment.)

APPEARANCES:

MICHAEL J. ELLIOTT, Attorney at Law, for Appellants.

THOMAS J. LOCASCIO, Attorney at Law, for Appellants.

STEPHEN W. FUNK and JUSTIN P. MARKEY, Attorneys at Law, for Appellee.

JOHN T. MCLANDRICH and TAMI Z. HANNON, Attorneys at Law, for Appellee.