[Cite as *Adair v. Norton*, 2017-Ohio-5619.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

TIM AND CONNIE ADAIR, et al.

     Appellants

     v.

THE CITY OF NORTON

     Appellee

C.A. No.     28137

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2013 02 1134

DECISION AND JOURNAL ENTRY

Dated: June 30, 2017

---

CARR, Presiding Judge.

{¶1}   Plaintiffs-Appellants Tim and Connie Adair and Paul Ritzman (collectively "the Homeowners") appeal from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}   This appeal involves a dispute over whether a sanitary sewer surcharge imposed by Defendant-Appellee the City of Norton ("Norton"), and collected by the City of Barberton ("Barberton"), applies to the Homeowners based upon the language of the authorizing ordinance. Norton has nine geographic areas within its boundaries that are connected to sanitary sewers. There is no treatment facility for wastewater within Norton limits. Because of this, four of the areas are connected to individual self-contained sewers and receive treatment services from package plants owned by Summit County, which are described as being similar to large septic tanks. The remaining five areas ultimately discharge into sewers owned by Barberton and

receive sanitary sewage treatment from the Barberton Wastewater Treatment Plant ("Barberton plant"). Four of those five areas contain sewers owned by Norton. The remaining area, known as Spring Avenue Outfall, consists almost entirely of sewers owned by Summit County.[1] Nonetheless, the sewers in the Spring Avenue Outfall area also discharge into the Barberton sanitary sewer system. The Homeowners reside within the Spring Avenue Outfall area and their sewers are owned by Summit County. Residents within the Spring Avenue Outfall area receive bills for sanitary sewer service from Barberton.

{¶3} Prior to 1997, Barberton billed sanitary sewer customers in Norton at a rate double the rate charged to sanitary sewer customers within Barberton. In 1997, Barberton and Norton entered into a 75-year Water and Sewer Agreement ("1997 Agreement"), which states in part that "Barberton shall provide sanitary sewage transportation and treatment services to Norton by allowing sanitary sewer extensions within Norton to be connected to the sanitary sewer system or supplied sanitary sewer service of Barberton. The service area for this sanitary sewer service shall be the corporate limits of Norton as the same may change from time to time, exclusive of areas which receive sanitary sewer service from the County of Summit." The agreement specified rates that Barberton would charge customers in the "Norton sanitary sewer service area." For the first five years, all Norton customers were charged a rate equal to the rate charged Barberton customers plus 50%. Five years following entry into the agreement, Barberton began charging all of its Norton customers a rate equal to the rate charged Barberton customers plus 22.5%.

---

[1] There are a few sewer extensions within the Spring Avenue Outfall area that are owned by the City. All of those were installed after the ordinance at issue became effective.

**{¶4}** In 2003, at the behest of Norton, Finkbeiner, Pettis & Strout, Inc., a group of consulting engineers, completed a study addressing potential water and sanitary sewer charges. That study found that there was "a need for [Norton] to assess charges for the continual use of the water and sanitary sewer systems to help pay for capital improvement projects for the water and sanitary sewer systems. This charge would be in the form of a surcharge added to the monthly water/sewer bill that customers received from [Barberton]." It stated that the "surcharge should be established by ordinance with the customers being billed in accordance with the standard billing practices of [Barberton]." The study further provided that the monthly surcharge would "be billed to customers who [we]re connected to water mains and sanitary sewers owned by Norton and to sanitary sewers owned by Summit County that eventually discharge into the Barberton sanitary sewer system." However, "[n]o charges w[ould] be billed to customers who [we]re connected to sanitary sewers owned by Summit County that discharge to the County's package [plants] because the flow from these plants is not part of the flow from Norton going into Barberton's sanitary sewer system." With respect to the sanitary sewer surcharge, the study recommended that Norton impose a surcharge that equaled 27.5% the rate charged to Barberton customers. The study included a proposed version of the ordinance.

**{¶5}** In 2003, Norton passed an ordinance imposing a sanitary sewer surcharge in the amount recommended by the study.[2] *See* Norton Codified Ordinances ("Loc.Ord.") 1042.06. The uncodified preamble of the ordinance noted that Norton City Council determined the surcharge was reasonable and proper based in part upon information provided by the study. This surcharge was imposed upon all Norton residents whose sanitary sewers discharged into the

---

[2] That ordinance was amended in 2004 to clarify that the sewer surcharge was 27.5 times the current user rate that Barberton charged Barberton residents. *See* Loc.Ord. 1042.06; *see also* *Adair v. Norton*, 9th Dist. Summit No. 27474, 2015-Ohio-3444, ¶ 3, fn. 1.

Barberton sanitary sewer system, including the Homeowners and the other residents of the Spring Avenue Outlet.

{¶6} The Homeowners initiated this action in 2013, seeking "declaratory and injunctive relief together with the return of the sewer surcharges. The Homeowners' claims included constitutional challenges to the surcharge, and they alleged that imposing the surcharge on them violated Loc.Ord. 1042.06. Thereafter, the parties filed competing motions for summary judgment, and the trial court granted Norton's motion." *Adair v. Norton*, 9th Dist. Summit No. 27474, 2015-Ohio-3444, ¶ 4. The Homeowners appealed but did not raise their constitutional claims on appeal. *Id.* at ¶ 9. Instead this Court only addressed the following issues: "the trial court's interpretation of Loc.Ord. 1042.06, the trial court's determination that the Homeowners failed to show a valid cause of action against Norton on this claim, and the statute of limitations relative to this claim." *Id.*

{¶7} "Based upon the wording of the ordinance, the Homeowners claimed that the ordinance applies only to Norton residents whose homes connect to sewer lines that *are owned* by Norton. Because the sewer lines in the Spring Avenue Outfall are owned by Summit County, the Homeowners maintain[ed] that Loc.Ord. 1042.06 does not allow Norton to impose on them a surcharge." (Emphasis sic.) *Id.* at ¶ 11. As the trial court failed to find the ordinance ambiguous before interpreting it, we sustained the Homeowners' assignment of error and remanded the matter for the trial court to consider in the first instance. *Id.* at ¶ 14. We also ordered the trial court to clarify its basis for concluding that the Homeowners did not state a valid cause of action, and concluded that a review of the statute of limitations issue was premature. *See id.* at ¶ 18, 20.

{¶8} Upon remand, the trial court allowed additional briefing and held an oral hearing.[3] Thereafter, the trial court again granted summary judgment to Norton. It concluded that the ordinance was not ambiguous and that the surcharge applied to the Homeowners. Additionally, it found that, even if the ordinance was ambiguous, it would still find in favor of Norton. Thereafter, the trial court essentially found the remaining issues were moot.

{¶9} The Homeowners have appealed, raising three assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE CITY OF NORTON FINDING THAT THE PLAINTIFFS-APPELLANTS ARE PART OF THE CITY OF NORTON'S SANITARY SEWER SYSTEM ACCORDING TO THE UNAMBIGUOUS LANGUAGE OF THE SUBJECT ORDINANCE.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ITS INTERPRETATION OF THE SUBJECT ORDINANCE WHEN IT FAILED TO CONSIDER THE TERM SANITARY SEWER SYSTEM ACCORDING TO PARTICULAR MEANING BUT ADOPTED ITS OWN MEANING.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE CITY OF NORTON WHEN IT HELD THAT THE PLAINTIFFS-APPELLANTS ARE PART OF NORTON'S SANITARY

---

[3] A transcript of the oral hearing is not in this Court's record. Normally, such a failure would warrant a presumption of regularity in the proceedings below. *See Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). However, given the standard of review of summary judgment, and the fact that it was not an evidentiary hearing, we will proceed to address whether summary judgment was properly awarded. *See Fifth Third Mtge. Co. v. Wizzard*, 12th Dist. Butler No. CA2012-11-226, 2013-Ohio-3084, ¶ 11; *Green Industries Corp. v. Green*, 1st Dist. Hamilton No. C-900469, 1991 WL 229470, *2 (Nov. 6, 1991); *Council of Whitehall v. Rogers*, 10th Dist. Franklin No. 80AP-102, 1980 WL 353412, *1 (Apr. 17, 1980).

SEWER SYSTEM BASED UPON AN AGREEMENT WHICH BY ITS VERY TERMS EXCLUDE THE PLAINTIFFS-APPELLANTS.

{¶10} In the first assignment of error, the Homeowners allege that the trial court erred in granting summary judgment by finding that the ordinance was unambiguous and that the Homeowners were part of Norton's sanitary sewer system. The Homeowners argue in their second assignment of error that the trial court erred in failing to adopt the definition of "sewerage system" contained in the Ohio Revised Code and the Ohio Administrative Code. In their third assignment of error, the Homeowners assert that the trial court erred in granting summary judgment by determining that the Homeowners are part of the Norton sanitary sewer system based upon the 1997 Agreement. Essentially, the assignments of error assert that the trial court erred in granting summary judgment because the ordinance did not apply to the Homeowners. Because of that, we will address them together.

{¶11} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶12} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977).

{¶13} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue

as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶14} Loc.Ord. 1042.06[4] provided as follows:

Council hereby establishes the following regulations and surcharges *for users connected to the City's sanitary sewer system*:

(a)  No person, corporation, public agency, partnership or association whatsoever shall remain connected or continue to use, either directly or indirectly, the City's water system without paying the applicable sanitary sewer surcharges established in this section and any applicable additional charges determined in accordance with the provisions of this section or otherwise.

(b)  *The City shall charge customers connected to sanitary sewers that ultimately discharge to the Barberton sanitary sewer system a surcharge of 27.5% times the current user rate Barberton charges Barberton residents.*

(c)  No later than the end of 2007 and at least every five years thereafter, and at any other time that Council finds appropriate the surcharges shall be recalculated based on the flow billed by Barberton and Summit County and the replacement cost of the sanitary sewer system that ultimately discharges to the Barberton sanitary sewer system at that time.

(d)  For so long as the agreement between the City and Barberton remains in effect, Barberton shall charge and collect the surcharge described in this section in conjunction with its surcharges and remit those surcharges to the City as provided in the agreement. All monies collected by the City as charges from Barberton shall be deposited into the Sanitary Sewer Utility Fund for the City.

---

[4] We note that, subsequent to briefing and oral argument in this case, Loc.Ord. 1042.06 was repealed. However, as Homeowners, inter alia, seek a refund of the surcharges imposed, we determine the appeal is not moot.

(e)  The imposition of surcharges provided for in this section shall not preclude the levy of special assessments and/or charges against benefited properties, now in place or imposed in the future, to provide funds and/or reimburse the City for its cost to construct, replace, rehabilitate or otherwise improve sanitary sewers required to provide sanitary sewer service to such properties, and the charges provided for in this section are in addition to any other permits and charges required by law.

(f)  In the event that any lot or land or building or other structure thereon is connected directly or indirectly to the sanitary sewer system in violation of any of the provisions of this section, and the owner, agent, lessee, tenant or occupant of such lot or land fails or refuses to disconnect the same upon being directed to do so by the City, the City Engineer is hereby authorized to cause such lot or land to be disconnected from the sanitary sewer system, and the violator shall be liable to the City for the cost of making such disconnection.

(Emphasis added.)

{¶15}  The Homeowners maintain that they are not subject to the surcharges in Loc.Ord. 1042.06 because the opening language of the ordinance stated that the surcharges apply only to "users connected to the City's sanitary sewer system[,]" and the Homeowners are not "users connected to the City's sanitary sewer system[.]"  Specifically, they assert that "the City's sanitary sewer system" refers only to sanitary sewers "owned, operated, leased or contracted for" by Norton and their sewers are owned by Summit County.  There appears to be no dispute that, if this Court concludes that the Homeowners are "users connected to the City's sanitary sewer system[,]" then the Homeowners would be subject to the surcharge in Loc.Ord. 1042.06(b) because it is undisputed that their sewers ultimately discharge into the Barberton sanitary sewer system.  *See* Loc.Ord. 1042.06(b).

{¶16}  Both parties argued that the ordinance was not ambiguous and that the text supported their respective position.  The trial court found that the ordinance was unambiguous and concluded that the Homeowners were subject to the surcharges in the ordinance.  However, while the trial court found the ordinance to be unambiguous, it also appears to have interpreted

it; the trial court found for Norton because it concluded that the Homeowners were part of Norton's sanitary sewer system based upon the 1997 Agreement and the practices of Barberton and Norton, not based upon the plain language of the ordinance.

{¶17} "When the language of the ordinance is unambiguous, the courts apply the plain and ordinary meaning of the words. Unambiguous language does not require court interpretation or application of the rules of statutory construction. Instead, the court must only read and follow the words of the ordinance. On the other hand, an ambiguous ordinance contains language that is susceptible to more than one reasonable interpretation, thus necessitating court interpretation." (Internal citations and quotations omitted.) *Adair*, 2015-Ohio-3444, ¶ 13.

{¶18} R.C. 1.49 provides that:

If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

(A) The object sought to be attained;

(B) The circumstances under which the statute was enacted;

(C) The legislative history;

(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

(E) The consequences of a particular construction;

(F) The administrative construction of the statute.

*See State ex rel. Patterson v. Youngstown*, 10 Ohio St.3d 8, 9-10 (1984) (applying R.C. 1.49 to the interpretation of an ordinance).

{¶19} We conclude that the phrase "users connected to the City's sanitary sewer system" is ambiguous. Thus, we agree that the trial court erred to the extent it concluded otherwise. We also determine that it is appropriate to proceed to analyze the merits of this appeal because the trial court conducted an alternate analysis; it found that, even if the ordinance

was ambiguous, it would still find in favor of Norton, based upon the reasoning of the dissent in the prior appeal. We conclude, albeit for different reasons than those of the trial court, that, after considering the factors in R.C. 1.49, Norton City Council intended the Homeowners to be subject to the surcharge in Loc.Ord. 1042.06; thus, the trial court did not err in granting summary judgment to Norton.

{¶20}  While the phrase "the City's sanitary sewer system" could refer to those sewers in some way owned by Norton, we cannot say that the plain language requires that conclusion. *See Merriam-Webster's Collegiate Dictionary* 968 (11th Ed.2004) (defining a possessive as "of, relating to or constituting a word, a word group, or a grammatical case that denotes ownership *or a relation analogous to ownership*) (Emphasis added). Norton argued below that the phrase "the City's sanitary sewer system" should be read to encompass more than just the sewers owned by Norton and should include "the entire sanitary sewer system that the City of Norton has established, by contract or otherwise, for the benefit of its citizens." Thus, Norton appears to have argued that "the City's sanitary sewer system" refers to the sewers within the territorial limits of Norton irrespective of ownership. Further, Norton pointed out that the evidence established that the Spring Avenue Outfall sewers were connected, directly or indirectly, to Norton owned sewers. Thus, the Homeowners could be considered "users connected to the City's sanitary sewer system." We note that the ordinance did not specify in the opening sentence whether the users must be directly connected to Norton's sanitary sewer system. Given the foregoing, we conclude that the phrase "users connected to the City's sanitary sewer system" is ambiguous as it is subject to more than one reasonable interpretation.

{¶21}  Thus, we turn to examining R.C. 1.49 to determine the legislative intent of Loc.Ord. 1042.06. Considering the uncodified portion of the ordinance and the study conducted

by Finkbeiner, Pettis & Strout, Inc., we determine that Norton City Council clearly intended to include the Homeowners as "users connected to the City's sanitary sewer system." The uncodified portion of the ordinance specified that Norton City Council "determined the surcharges established [in the ordinance] are reasonable and proper, based upon all relevant circumstances and conditions and the information and analysis" contained in the study. City of Norton Ordinance No. 68-2003. The study, as discussed above, provided that the monthly surcharge would "be billed to customers who [we]re connected to water mains and sanitary sewers owned by Norton and to sanitary sewers owned by Summit County that eventually discharge into the Barberton sanitary sewer system." Additionally, the uncodified preamble stated that "as an essential part of providing funds for reinvestment in the equity that the City has in the existing sanitary sewer system, this Council has determined that it is necessary to impose surcharges for lots and lands *connected directly or indirectly to the sanitary sewer service system that ultimately discharges to the Barberton sewer system* with such surcharges to be determined, as set forth in this Ordinance, *so as to distribute anticipated maintenance, replacement and improvement costs as equitably as possible among customers*[.]" (Emphasis added.) City of Norton Ordinance No. 68-2003.

{¶22} Given the foregoing, we conclude that Norton City Council intended for the Homeowners to be considered "users connected to the City's sanitary sewer system[.]" Loc.Ord. 1042.06. We see no need to rely on or interpret the 1997 Agreement to determine the legislative intent behind Loc.Ord. 1042.06, as we conclude it is clear from the uncodified portions of the ordinance and the study discussed above. Further, we see no need rely on the Ohio Revised Code's or the Ohio Administrative Code's definition of another term, namely, "sewerage system" in order to define "sanitary sewer system[.]" Because we conclude that Norton City

Council intended for the Homeowners to be "users connected to the City's sanitary sewer system[,]" it is undisputed that they are also subject to the surcharge in Loc.Ord. 1042.06(b) as they are "customers connected to sanitary sewers that ultimately discharge to the Barberton sanitary sewer system * * *." Loc.Ord. 1042.06(b).

{¶23} The Homeowners' assignments of error are overruled.

### III.

{¶24} The Homeowners' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

MICHAEL J. ELLIOTT, Attorney at Law, for Appellants.

THOMAS J. LOCASCIO, Attorney at Law, for Appellants.

JOHN T. MCLANDRICH, Attorney at Law, for Appellee.

STEPHEN W. FUNK, Attorney at Law, for Appellee.